Florence Hill Frost *v.* Samuel W. McCaulley and
J. Augustus McCaulley, Trustees under the Last
Will and Testament of William McCaulley, De-
ceased.

New Castle, September Term, 1894.

Wills — construction of; Legacies — vested or contingent;
Gift — enjoyment of, postponed by the will.

1. When no time is fixed by the testator for the division
of the estate directed in the will, it becomes the duty
of the court to fix such a time as will best aid in carry-
ing into effect the uses, intents and purposes for which
the trust created in the will was established.

2. The testator, by will, gave his executors power to in-
cumber his estate at their discretion, and then to sell it
and divide the proceeds into eleven shares. As to the
last of these shares, he provided as follows: " The in-
come of one other, and the last of said shares or parts,
I give to F. H. F., payable half yearly for ten years,
after which time I give the same to her absolutely."
In another part of the will, he provided that: " And
I hereby authorize my executors and trustees, at their
discretion, to pay to any of my children who may need
it, such sums from time to time, before the estate is
settled, as they may deem needful and proper; the
same to be accounted for as part of the income of their
shares in my estate respectively." Held,

a. That the gift to F. H. F. was an absolute vested legacy,
but that it would have been otherwise had it been a
gift of the principal, without the gift of the income
during the interval between the death of the testator
and the expiration of ten years thereafter.

b. That the ten years is to be calculated from the date of
the death of the testator and not from the date of the
settlement by the executors.

BILL IN EQUITY.— Bill filed by Florence Hill Frost, legatee under the last will and testament of William McCaulley, deceased, for construction of certain portions of said will of said deceased.

H. H. Ward, for complainant.

An examination of the will of William McCaulley discloses the following special features:

1. That the only power of sale of any portion of the estate of the decedent, is " to the end " that his executors and trustees may pay his debts, funeral expenses and necessary expenses of settling his estate, " as soon as conveniently may be," after his decease.

2. That the executors and trustees are given power at their discretion to pay to any of the children of the decedent who may need it, such sum, from time to time, before the estate is settled, out of the income granted them, as the executors and administrators may deem needful and proper. The testator, by this provision, expressly indicates the character of the bequests made to the beneficiaries under his will, as that of *quasi* annuities, payable from the death of the testator. He has thereby plainly indicated an intent that these bequests of income upon the shares of his residuary estate granted to the several legatees, should begin to run with his death and not be delayed until the end of the year.

3. The devise and bequest to the trustees is not the proceeds of such sales or the net valuation of his estate, but is expressly " all my real, personal and mixed estate, of whatever kind or nature, wheresoever situate or being in the State of Delaware or elsewhere," so that

the attaching of the trusts and the performance of the special duties assigned to the trustees by the will, is not delayed until the settlement of the estate, or until the determination of the exact amount of the residuary estate, or the fixing of any definite sum arising from the division afterwards in the will provided.

4. The devise and bequest to the trustees is declared to be " in trust, nevertheless, for the uses, intents and purposes above and within mentioned."

The purposes " above mentioned," are the payment of the debts, funeral expenses and expenses of settling the estate, the sale of any portion of his estate that the executors and trustees should think advisable, the renting and management of the estate for the best advantage in every respect, as the testator might do if living; and to pay to any of his children such portion of their income before the settlement of the estate, as the trustees should deem needful and proper.

The uses, intents and purposes " within mentioned," are the power and authority to create liens pending the sale of the estate, the apportionment of the estate into eleven equal shares, the payment of the income upon each and every of these eleven shares to the legatees mentioned, the investment of the residue of his estate in securities mentioned, and the payment of certain specific legacies in the will enumerated.

All of these powers and duties are, so far as the will indicates, to be done and performed simultaneously and from the death of the testator.

5. The apportionment of the estate into eleven equal shares by the executors and trustees is, so far as any intention is indicated by the testator, to take place im- .

mediately on the death of the testator, and at least for
the purposes of payment of income.    In the practical
administration of the estate, it was probably convenient
for the trustees to make a definite division of the estate
after payment of debts and expenses, and the specific
funding of each separate share may have been delayed
until such settlement of the estate; but, under the terms
of the will, the payment of the annuities, or *quasi*
annuities, arising from these shares or parts of the es-
tate, allotted to the different legatees, is clearly in-
tended by the testator to be from the date of the death
of the testator.    Under no single decision or rule of
law could any other intent be construed into the will
with reference to the shares given to Sybilla McCaulley,
Samuel Sinclair McCaulley and Mary Sinclair Jefferis
and Elizabeth W. Combe, since there is a devise over of
the principal.    Every authority is clear upon this point.
The wording of the bequests of the income of the re-
maining one-tenth share of the estate of the testator,
is precisely the same and affords no ground for dis-
tinction between the other ten shares and the share
willed to the complainant.    The only possible distinc-
tion between the other ten shares and the remaining
one-eleventh share willed to Florence Hill Frost, the
complainant in this bill, is that she is constituted the final
and full beneficiary of the share itself as well as the in-
come of said share.    The identical wording, however,
of the grant of the income of the whole eleven shares,
including that to the complainant, points to an identical
intent on the part of the testator that the income upon
each of the ten shares should be paid to the beneficiaries
of those shares from the death of the testator.    This

intent is fully supported by the manner in which the whole estate is immediately vested in the trustees, and by the powers granted them, which are above referred to. 3 Jarman on Wills (5th Am. ed.), 707, rule 18, 708-722.

6. It should also be noted that the division of this estate and the separation of the different shares is not postponed to any special future day, but, under the terms of the will, is to be made at once.

The question raised by the item of the will, in which the one-eleventh share in controversy is given to the complainant, and which is the only question now before the court in the construction of this will, is whether the time has now arrived when the complainant can demand payment of the principal of the fund which represents her one-eleventh interest in the estate.

This " item " reads as follows: " The income of one other, and the last of said shares or parts, I give to my granddaughter Florence Hill Frost, daughter of my son William S. McCaulley, deceased, payable half-yearly, for ten years, after which time, I give the same to her absolutely."

No authority need be cited for the point that, with reference to such a disposition of a testator's general estate after his decease, as is expressed in the item of this will under consideration, the will speaks from the death of the testator.

The natural reading of the " item " in question is that " after which time " (the ten years mentioned immediately preceding) " I give the same " (meaning the last of said shares or parts) " to her " (Florence Hill Frost) " absolutely."

This, the natural and almost unavoidable sense of this "item" in this particular, will under the rules for construction of wills, and the ascertainment of the intent of the testator, be adopted by the court, unless there is something else in the will clearly showing a different intention on the part of the testator. 3 Jarman on Wills (5th Am. ed.), 107, rule 16.

The only other possible construction of the words of this section would be that the possession of the principal of the fund is postponed until the income of the fund has been actually paid to the complainant for ten years, which reading, in case the will should be construed as not directing the payment of the income from the death of the testator, would apparently postpone the payment of the principal of the fund until after the tenth annual payment of income, and would make the intent of the testator depend upon the actual administration of his estate after his death, and the date of the first payment of income by the trustees to the complainant. But events occurring subsequent to the death of the testator are clearly incompetent evidences of the intent of the testator, which intent, upon such a point as this, must be gathered from the terms of the will itself.

The intent of the testator, that the income upon the share given to the complainant should begin to run with the death of the testator, clearly appears upon the face of the will, as above shown.

But, upon a fair reading of this will, the income of this share, payable half-yearly, is in legal effect an annuity. Redfield on Wills (Part II), 168, chap. 5,

§ 10, par. 25; Sullivan et ux. v. Winthrop et al. (Story, J.), 1 Sumn. 11, 12.

An annuity given by will commences immediately from the testator's death, and payments are recoverable from his death. 2 Williams on Executors, 1491; Redfield on Wills (Part II), 171, chap. 5, § 26, par. 13; Houghton v. Franklin, 1 Sim. & Stu. 392; Sargent v. Sargent, 103 Mass. 297; Hilyards' Estate, 5 W. & S. (Penn.) 30; Eyre v. Golding, 5 Binn. 472; Sullivan et ux. v. Winthrop et al. (Story, J.), 1 Sumn. 11, 12.

So far as the construction of this will is concerned, the methods pursued by the executors and trustees in the settlement of the estate, have no application or force. If the intention of the testator can be either gathered from the face of the will or be construed into said will by the application of legal principles that the income was payable upon the share of the complainant from the death of the testator, the construction of the item in question, even upon the second alternative reading above suggested, would entitle this complainant to the payment at this time of the principal of the share of the estate now in controversy.

If the principal of his legacy is now due, it is payable immediately to this complainant, upon the principle, that the year's time which an executor has to pay a legacy, must be intended as from the death of the testator, and not of legacies falling due at a period after the first year following the testator's death is over; in such case, the executor or trustee is entitled to no delay. 2 Williams on Executors, 1489; Redfield on Wills (Part II), 565, chap. 13, § 59, par. 2; Laundy v.

Williams, 2 P. Wms. 478; Miller v. Philip, 5 Paige, 573.

But, by a course of reasoning, wholly independent of the foregoing, the same conclusion may be reached that under the rules of law, as clearly laid down, the complainant is entitled to the immediate payment of the principal of the share in controversy.

It sufficiently appears upon the face of the bill and of the will of William McCaulley, that the complainant, Florence Hill Frost, is now twenty-one years of age and upwards. The face of the will itself shows that she was a married woman, having changed her name from Florence Hill McCaulley to Florence Hill Frost before the date of the execution of the will. The will was executed on the 12th day of March, A. D. 1880, about fourteen years ago. So that, unless the complainant was married before the age of seven years, she must now be twenty-one years of age and upwards.

This legacy is vested in interest; for (as exception to the general rule) it is laid down, that where a testator bequeaths a legacy to a person at a future time, and gives the legatee the intermediate income or interest, the court then considers the disposition of the income or interest to be an indication of the testator's intention that the legatee should, at all events, have the principal, and on this ground, holds such legacy to be vested. 2 Williams on Executors, 1335-1336; Redfield on Wills (Part II), chap. 14, § 64, pars. 30, 31, 33 and 35; 2 Jarman on Wills (5th Am. ed), 459, 460, 461, etc.; Fearne on Contingent Remainders, 553, note by Mr. Butler; Hanson v. Graham, 6 Ves. 239; Saunders v. Vautier, 1 Cr. & Ph. 248; Hoath v. Hoath, 2 Bro. C. C. 4; Parker

v. Golding, 13 Sim. 418; Lister v. Bradley, 1 Hare, 10-13; In re Hart's Trust, 3 DeG. & J. 195; Fox v. Fox, 19 L. R. Eq. Cas. 286; Roberts' Appeal, 59 Penn. St. 70; Eldridge v. Eldrige, 9 Cush. 516; Burrill v. Sheil, 2 Barb. 457, 470, etc.; Vanwick v. Bloodgood, 1 Bradf. Sur. 154; Vawdry v. Geddis, 1 Russ. & My. 207; Jones v. Mackilwain, 1 Russ. 220; Murray v. Addenbrook, 4 Russ. 407, 418-419; Murkin v. Philipson, 3 Myl. & K. 257; Pearson v. Dolman, 3 L. R. Eq. Cas. 315; Cave v. Cave, 2 Vern. 508; Stapleton v. Cheele, id. 673; Collins v. Metcalf, 1 id. 462; Wolcott v. Hall, 2 Bro. C. C. 305; Dodson v. Hay, 3 id. 404, 409, 410; In re Peek's Trusts, L. R., 16 Eq. Cas. 221; Stevenson v. Lesley, 70 N. Y. 512; Peterson's Appeal, 88 Penn. St. 397.

The phrase "after which time" is apparently intended only to postpone the time upon which the principal of the legacy would be payable to the complainant. But, even if construed as a phrase importing a condition, it would not interfere with the above rule of law.  2 Jarman on Wills (5th Am. ed.), 459-460, and the cases cited under the preceding point.

Where the testator gives a legatee an absolute vested interest in a defined fund, so that according to the ordinary rule he would be entitled to receive it on attaining twenty-one years of age, but by the terms of the will, payment is postponed to a subsequent period, the court will, nevertheless, order payment upon the legatees attaining the age of twenty-one.  2 Williams on Executors, 1505; Saunders v. Vautier, 4 Beav. 115; 1 Cr. & Ph. 240; Joselyn v. Joselyn, 9 Simm. 63; Merritt v. Richardson, 14 Allen, 239, 241, 242; Curtis v. Lukin, 5 Beav. 147, 155, 156; Greet v. Greet, id.

123; In re Jacobs' Will, 29 id. 402; In re Young's Settlement, 18 id. 199; Rocke v. Rocke, 9 id. 66; Re Culson's Trusts, Kay, 133-141; Coventry v. Coventry, 2 Dr. & Sm. 470.

Bradford & Vandegrift, for respondents.

WOLCOTT, CHANCELLOR.— This case was heard on bill and answer. The latter admits all the allegations of fact contained in the former, but practically denies the legal effect thereof.

William McCaulley, late of the City of Wilmington, in his lifetime, made his last will and testament, bearing date the 12th day of March, A. D. 1880, in which he gave and devised his property to the persons therein named in the shares and proportions, as shown in the following items of said will:

" First. It is my will that my just debts and plain and moderate funeral expenses, and the necessary expenses of settling my estate, be first paid as soon as conveniently may be, after my decease, and to that end I authorize and empower my executors and trustees, hereinafter named, to sell and convey to the purchasers in fee-simple, or otherwise, all or any part of my estate for cash or upon credit, or part cash and part credit, at public or private sale, in small or large lots in all things at their discretion, as they may deem best for the advantage of my estate, and out of the net proceeds of such sale, and from collections to pay off all my debts, and to rent and manage my estate so as to have the same settled in a fair and reasonable time after my decease; and to manage the said estate for the best advan-

tage in every respect, as I might or could do if living. And I hereby authorize my executors and trustees, at their discretion, to pay to any of my children who may need it, such sums from time to time before the estate is settled, as they may deem needful and proper; the same to be accounted for as part of the income of their shares in my estate, respectively.

" Second. I give, devise and bequeath unto my two nephews, Samuel W. McCaulley and John Augustus McCaulley, and the survivor of them, all my real, personal and mixed estate of whatever kind or nature, or wheresoever situate or being in the State of Delaware, or elsewhere; to them, their heirs, executors, administrator and assigns; in trust, nevertheless, for the uses, intents and purposes above and within mentioned; and especially with power and authority to create liens cn any part of my estate by note, judgment and mortgage, or otherwise, until my estate can safely be sold at their discretion. And to apportion my estate into eleven equal shares or parts to be distributed as follows, to-wit:

" The income of one of which shares or parts, I give to my beloved wife, Sibilla McCaulley, to be paid to her half-yearly, for and during her natural life, to be deemed and taken in lieu and bar of dower in my estate. I make this provision for the love and affection I bear her, she having her own estate, which is ample, and there being a marriage contract between us, authorizing each party to have and manage his or her estate, without the claim or interference of the other, and in bar of dower, said marriage contract being in the hands of one Waddell, of Trenton, New Jersey, and after the decease of my said wife, I order the same principal and

income paid to my granddaughter, Florence Hill Frost, absolutely, her heirs and assigns.

" The income of one other of said shares or parts, I give to my son Samuel Sinclair McCaulley, to be used and expended for his use and benefit by my executors and trustees, and the survivor of them, for and during his natural life, at such times and in such manner as they may deem for his advantage, and after his decease, and after paying for his necessary expenses in last sickness and funeral expenses I give said share or part unto his sisters and nephews and nieces, share and share alike, absolutely.

" The income of four other of said shares or parts, I give unto my daughter Mary Sinclair Jefferis and her two sons and my grandsons, William McCaulley Jefferis and Joseph Herbert Jefferis, half-yearly, she to receive two shares and they one share each, until the decease of their mother, when each son shall have two shares absolutely.

" The income of four other of said shares or parts, I unto my daughter, Elizabeth W. Coombe, and her two daughters and my granddaughters Kate Halloway and Elizabeth Coombe, Jr., payable half-yearly, the mother to receive two shares and each of her daughters one share, until the decease of the mother, when each daughter shall have two shares absolutely.

" The income of one other, and the last of said shares or parts, I give to my granddaughter Florence Hill Frost, daughter of my son William S. McCaulley, deceased, payable half-yearly, for ten years, after which time I give the same to her absolutely."

The testator departed this life on or about the 22d day of September, A. D. 1883, leaving said will unrevoked, which was duly admitted to probate by the Register of Wills in and for New Castle County, and on the 27th day of September of the same year letters testamentary were, in due form of law, granted to Samuel W. McCaulley and John Augustus McCaulley, the executors named in said last will and testament. The executors, in the course of the administration of the testator's estate, on the 4th day of April, A. D. 1889, passed a third and last account, wherein they showed a balance due the estate of $58,382.95. Of this sum it is admitted that Samuel W. McCaulley and John Augustus McCaulley, who had assumed the character of trustees, under the direction contained in the said will, held $5,287.36 in trust for the complainant, Florence Hill Frost.

The complainant's share of the estate of the testator is the one-eleventh part. The provision of the will under which she takes reads as follows:

" The income of one other and the last of said shares or parts, I give to my granddaughter Florence Hill Frost, daughter of my son William S. McCaulley, deceased, payable half-yearly, for ten years, after which time I give the same to her absolutely." The question raised by this provision of the will is whether the principal of the fund, which represents the complainant's interest in the estate of the testator, became payable at the expiration of ten years from the day of the death of the testator; that is to say, on the 23d day of September, A. D. 1893.

It is admitted that the complainant at that time was over twenty-one years of age, and, therefore, competent to receive her legacy and execute an acquittance for the same, unless there was annexed to the substance or the payment thereof a condition which forbids the complainant's right of immediate possession thereto. Was there such a condition?

The first step in the determination of this question is to ascertain the time when the division of the estate, as directed by the will, was to take place. As no definite time was fixed by the testator, it becomes the duty of the court to fix such time as will best aid in carrying into effect the uses, intents and purposes for which the trust created in the second item of said will was established. By conferring on his executors and trustees the power to pay to any of his children such sum or sums of money, from time to time, before the estate was settled, as any of them might need, and such payments to be treated as part of the income of their respective shares, the testator clearly indicated that the division of the estate should be made or be considered as made before the final adjustment or settlement of the same. It must be observed that the payments to the children of the testator were to be made out of the income produced by their respective shares. How could the executors and trustees make such payments while the estate remained in bulk or undivided according to the scheme of division as presented in the will? He nowhere in his will provided for the investment of his whole estate and the distribution of the interest annually accruing thereon among those whom he had designated as the objects of his bounty. But he did ex-

pressly provide for the investment of each share and
the disposition of the income arising therefrom, thus
making the income to be derived from the shares of
some of the legatees the only source whence they could
derive any benefit from the testator's generosity.
Though the estate has now been actually apportioned
or separated into shares as directed by the will, yet, for
the purposes of the will, it must be treated as so sepa-
rated from the death of the testator.    To concede that
the time for the division of the estate would be imme-
diate after the final settlement thereof would make the
enjoyment of each gift contingent upon the sloth or
diligence of the executors, and might result in partial
or total defeat of the intention of the testator, as to one
or all of his beneficiaries, especially those whose inter-
ests are coexistent and coterminous with their lives.
There is, therefore, not a shadow of reason for imput-
ing such an intention to the testator.    Though the es-
tate has never been actually apportioned or separated
into shares, as directed by the will, yet for the purposes
of the will it must *ex necessitate rei* be treated as so
separated from the death of the testator.    What in
equity ought to be done is considered as done.

Having ascertained the time when the division of the
estate took place, we must next inquire whether the
share of the complainant is a vested or a contingent
legacy.    The provision of the will, by which the testa-
tor gave to the complainant one-eleventh part of the
estate in the first place, gives to her the income, payable
semi-annually, for ten years, and after that time gives
to her "the same;" that is, the principal, absolutely.
The gift to her of the principal, without the gift of the

income, during the interval between the death of the testator and the expiration of ten years thereafter, would have made her share a contingent legacy, but the appropriation of the accruing interest during that interval for her benefit makes the gift, in substance, an absolute vested legacy, divided into two distinct portions or interests, for the purpose of postponing not the vesting but the possession only.    1 Jarman on Wills, 843 (5th ed. Bigelow).

It is, therefore, a vested legacy, payable immediately after the expiration of ten years from the testator's death with all the unpaid interest thereon.