GUSTAV W. LEMBECK et al., executors, &c.,

*v.*

EMMA LEMBECK et al.

[Argued October 15th, 1907.  Decided December 17th, 1907.]

1. When estates and interests in property left by a testator are vested at his death, the postponement of possession thereof will not violate the rule against perpetuities.

2. Upon application of executors and trustees under a will various provisions thereof are construed.

On bill for the construction of the will of Henry Lembeck, deceased, and instruction to executors and trustees.

*Mr. Robert S. Hudspeth* and *Mr. Benjamin C. Pascus* (of the New York bar), for the complainants.

*Mr. Gilbert Collins,* for the defendants.

MAGIE, CHANCELLOR.

The bill in this cause seeks the construction of the will of Henry Lembeck, deceased, who died on the    th day of July, 1904.  The will was dated on the 6th day of June, prior to his death.  Complainants represent that various clauses and provisions of the will are obscure to such an extent that complainants, who are beneficiaries as well as trustees, and defendants, who are also beneficiaries, disagree as to their true meaning, and that it is necessary that the meaning should be declared by this court to enable the trustees to properly perform their duty.

To disclose my conclusions upon the questions presented, I will take them up in the order in which they are contained in the prayer of the bill.

Several of these contentions relate to the construction of the third paragraph of the will, which is in these words:

"*Third.* It is my will, and I do order, that unless my executors here-inafter named shall consider it advisable, they need not sell or divide my stock in the 'Lembeck & Betz Eagle Brewing Company' until twenty-five (25) years have elapsed after my decease. And in the meanwhile such stock shall be held by my executors, the survivors or survivor of them hereinafter named, or those appointed in pursuance of the direction of my will, and the dividends which may accrue thereon shall be divided among the same persons in the same manner and proportion and for the same purpose as my residuary estate is directed to be divided under my said will; and when sold or disposed of, all the proceeds thereof or after the twenty-five (25) years, my said stock or the proceeds thereof shall become and constitute a part of my residuary estate and be disposed of as such is directed to be disposed of under my will."

Counsel for complainants, anticipating that counsel for de-fendants would contend that this paragraph of the will was open to objection as obnoxious to the rule against perpetuities and forbidding accumulations of that nature, proceeded to argue that it was not open to that objection. Counsel for defendants made no such claim in their argument, and the suggested doubt might, perhaps, be passed *sub silentio.* But as the powers conferred on executors and trustees, a construction of which is sought, depend upon the validity of the disposition by testator, it is proper to say that the paragraph in question is not, in my judgment, obnoxious to the rule against perpetuities and forbidding accumulations. While it is difficult to discover an harmonious scheme in this will, it is yet clear that whatever the testator left at his death was intended to be vested in some person then in being, or to come into being at the close of lives then in being, and that his will plainly expressed that determination. Some of the real estate is devised for life, but the remainder is either directly devised to beneficiaries in existence at the death of the testator, or whose existence is fixed by reference to his death, or to his executors in trust for similar beneficiaries. The residuary estate, including both real and personal property, is given to parties in being, and although some shares are to be held in trust for the lives of certain of the children, they pass at their death to other parties whose existence is fixed at the death of the testator.

The rule against perpetuities is a rule against postponing the vesting of estates for a period extending beyond lives in being and twenty-one years after. *22 Am. & Eng. Encycl. L. 703.*

The rule is directed solely against the unlawful postponement of the vesting of estates, and is not applicable to their possession or enjoyment. *22 Am. & Eng. Encycl. L. 722; Redf. Wills 846; Brandenburg* v. *Thorndike, 139 Mass. 102; Seaver* v. *Fitzgerald, 141 Mass. 401; Howe* v. *Morse, 174 Mass. 491.*

A part of the scheme of this will, so far as any can be discovered, is to segregate the stock which testator owned in the Lembeck & Betz Eagle Brewing Company, from the rest of his estate, and to permit his executors to hold the same in trust for certain purposes, for a period not extending beyond twenty-five years. As this stock passes by the residuary devise and bequest, it is now vested in those to whom the residuary estate goes, and the retention of it by the executors as trustees, under the discretion permitted to them, for a period not exceeding twenty-five years, is a mere postponement of the possession and does not affect the vesting of the interest in that stock. Consequently, I find no difficulty in maintaining the executors' right, as trustees, to hold this stock, and to hold it for a period of twenty-five years from testator's death, unless their discretion is unfairly exercised.

But the question presented as to the right of the executors to exercise a discretion to retain or to convert into money this stock, cannot be answered as the executors and trustees desire. Their contention is that the true construction of this paragraph permits them, at the present time, and at any time within the limited period, to convert into money this stock at their pleasure. This is undoubtedly true, if the third paragraph of the will must be considered by itself, but this is impossible. There are other paragraphs that must necessarily be read in connection therewith. Thus, by the fourth paragraph, testator gives to his wife certain real estate in fee. He then makes this provision: "And also so long as she remains my widow, I give her the income of the new buildings known as the northeast corner of Ocean and Lembeck avenues, and also known as the 'Hudson and Newburgh' apartment houses."

Then, by paragraph 17, he adds:

"*Seventeenth.* It is further my will that, in relation to the provisions herein made for my wife, should her income from the real estate known as the Newburgh and Hudson Apartments be in anywise reduced or im-

paired by reason of fire or any other injury or destruction of the said land and premises or any portion of the same, thence and in any and every such event, and whenever any such occasion shall arise, the amount of my said wife's income thus reduced or impaired shall be made up and paid from the income and dividends accruing from all the stock of the 'Lembeck & Betz Eagle Brewing Company,' held by my said executors in trust in my said last will and testament provided, without regard to the disposition made thereof in connection with such trust."

Reading together all these paragraphs which relate to this subject, I think it manifest that the testator intended that the stock in question should be retained by the executors as trustees, so long as necessary to guarantee the income he designed his wife to obtain from the two apartment houses, in which she was given an interest while she remained his widow. It is possible that the testator did not sufficiently consider the effect of the seventeenth paragraph, and yet it is quite consistent with his other provisions; for while by that paragraph the executors, as trustees, are required to retain the stock to secure the widow's income so long as she remains his widow, yet he provides for the distribution of the dividends during the time the stock is thus retained. The provision for the distribution of the dividends will be effective until the occasion arises when they, or some part of them, will be required, under the terms of the seventeenth paragraph, to supplement or complete the income designed to be given to the wife. Dividends not so used would still be divided as provided in the third paragraph. When the widow marries again, or dies, the unrestricted discretion of the executors arises, and they may sell the stock when they determine that it is advisable under the provisions of that paragraph.

Another question is presented respecting the meaning of this paragraph. It is whether the executors may sell this stock piecemeal. The executors contend that they may sell shares from time to time. The defendants contend that when the shares are sold, they shall be sold in a block comprising the whole of the stock owned by testator at his death. The true meaning, in my judgment, of the testator's will in this respect is, that when the executors reach the conclusion that it is advisable to sell the stock, they are bound to sell the whole of it. This would not make it necessary for them to sell the whole of the stock to a

single person, or even, perhaps, to sell it at precisely the same time, but it would require them to make sale of the whole of the stock in such way as to obtain the best price for the whole.

The next question presented also arises upon the third paragraph, and is the most troublesome one of all those submitted. It has respect to the meaning attributable to the testator's language as to the dividends accruing on the stock while held by the executors as trustees and not needed for the purpose specified in the seventeenth paragraph. The language to be considered is the following:

"The dividends which may accrue thereon shall be divided among the same persons in the same manner and proportion and for the same purpose as my residuary estate is directed to be divided under my said will."

The residuary estate is dealt with by the eighteenth paragraph of the will. Thereby all the rest, residue and remainder of his estate, real and personal, is devised and bequeathed to the executors in trust, for division among testator's eight children. Then follows a designation of the mode in which the eight shares thus separated are to be divided and pass to his children. To five of them the division is made of one share each without any limitation, the evident purpose being to vest in each child the absolute property in his or her share. One other share is to be divided to his executors (*i. e.,* to be retained by the executors) in trust, for his daughter Katie, "to pay the income thereof to my daughter, Katie Lembeck, during the term of her natural life and on her death the same is to revert to my residuary estate." One other share is to be retained by the executors in trust, to pay the income thereof at their discretion, to his son, Albert B. Lembeck, and after his death the same is "bequeathed" to his child or children now living. One other share is to be retained and held in trust for testator's son, Victor H. Lembeck, to pay the income thereof to him for life, and after his death, the share is given and devised to Victor's brothers and sisters, including brothers and sisters of the half-blood.

The contention of the executors is that reading the third paragraph together with the eighteenth paragraph, the dividends accruing on the stock, during the periods of its retention by the ex-

ecutors, are to be divided into eight shares among the eight chil-
dren, in the manner and proportion provided for in the eight-
eenth paragraph, that is, to each one-eighth. The dispute is with
respect to the intention of the testator in the use of the words
"for the same purpose" in his direction of the division of the div-
idends. On the part of the executors, the contention is that the
purpose of the eighteenth paragraph is to give to three of those
children, Katie, Albert and Victor, no interest therein other than
a life interest, and that the one-eighth of the dividends, provided
for each of them by this paragraph, must be taken by the execu-
tors and held by them for the lives of the respective children who
are to receive nothing therefrom during life, except the income
from any investment in which such share of the dividend may be
put.

The language of the third paragraph is, perhaps, capable of
the construction given to it by the executors. But I am per-
suaded that they misconceive the intent of the testator with
respect to the purpose which he had in mind when he made the
provisions of that paragraph. The testator was then dealing
with a block of stock, admittedly a large portion of his estate.
But for the provisions of the third and eighteenth paragraphs,
that stock would have been immediately sold and the proceeds
put into the residuary estate and divided. If divided, the whole
income of three of the eight shares, under the eighteenth para-
graph, would have been paid respectively to Katie, Albert and
Victor. Now, in view of the possible retention of that block of
stock from the residuary disposition which would have produced
this result, testator provided that the dividends accruing thereon
during such retention should be divided in the same proportions,
that is, into eight shares, and to the same persons, that is, to his
eight children named in the eighteenth paragraph, and for the
same purpose, that is, that those persons who, but for the reten-
tion of the stock from the residuum would have had an income
therefrom, should have the income from the stock during the
period it should be so retained. Any other construction, in my
judgment, would be contrary to the plain intent of the testator.

But this conclusion raises another question in respect to the
meaning of the testator as to the payment of such dividends to

the three children, Katie, Albert and Victor, which, had the executors' construction been adopted, would not have arisen until the time to divide the residuum should have arrived.

The provision of the third paragraph is that the dividends from the stock shall be divided as the residuum is directed to be divided. The income of each of the three shares for Katie, Albert and Victor is to be paid to them by the executors "at their .discretion." The executors contend that the shares of the dividends under paragraph 3 may be retained at their discretion from the three children named. Each of these children protests against this construction, and insists that they are entitled to the payment of the whole income of their respective shares. In my judgment, the executors adopted a wrong construction and gave a force to the words permitting them to use discretion which is unwarranted. All the parties are of full age. There is nothing to indicate that the discretionary power conferred upon the executors was to be exercised upon a judgment respecting the conduct or demeanor of the parties. It does not provide that the payment should be made if the executors are satisfied of good conduct, or of continuance of good habits or anything upon which a judgment could be founded. On the construction of the executors, the testator has conferred upon them a power to exercise a discretion to withhold the income, in whole or in part, from their brothers and sister without any reason for such deprivation.

To my mind it is inconceivable that the testator intended to confer upon these executors that sort of power, for they are directly interested in the residuary estate and in the bequest over, in the case of Victor, to Victor's brothers and sisters. The testator could never have intended to give to persons thus interested the power to determine capriciously, and without ground, whether or not the income should be paid. In my judgment the words "at their discretion" refer to the times and manner of payment. With that discretion no one can interfere, except it be exercised unfairly. But subject to that discretion, the whole shares of the dividends are to be paid to the three children especially interested in this discussion. Such payment must be made within a reasonable time after the dividends are received by

the executors and trustees. *Oram* v. *Peirce,* decided in June Term, 1907, court of errors and appeals.

Another question is presented, arising upon the provisions of the eighth paragraph of this will, whereby testator devised to his executors, in trust for his son Albert, certain real estate and the "real estate mortgage of $1,500 made to me by my son on lot 10-B in the same block   *   *   *   to pay the income at their discretion from time to time to my son Albert during the term of his natural life." Then follows a devise over of "said lands and buildings" to Albert's child or children now living. At the end of the same paragraph occurs the following: "Having advanced to my son, Albert B. Lembeck, moneys amounting to the sum of $21,000, it is my will, and I hereby direct, that he shall not be charged with any part thereof." By the sixth paragraph, testator devised to his daughter Katie several lots of land, including lot 10-B on block 1421. The language of paragraph 8 may, perhaps, be read as a gift of a mortgage on lot 10-B in block 1415, but as it is conceded that testator owned no such mortgage on lot 10-B in block 1415, it is, in my judgment, clear that the mortgage of $1,500 is a mortgage upon lot 10-B in block 1421, devised by the sixth paragraph to his daughter Katie. Testator at his death did not own lot 10-B in block 1421. He had owned it and had conveyed it to his son Albert, and afterward took from him the mortgage in question. Albert had thereafter conveyed it to his sister Katie, subject to the mortgage. So far as appears in this case, she did not covenant to assume and discharge the mortgage as a consideration for the conveyance to her of the lot on which it was a lien.

The singular condition is that testator devised to Katie a lot he did not own. At the same time he bequeathed a mortgage on that lot to his executors in trust for his son Albert for life, and in the same paragraph recited that he had advanced to Albert a very much larger amount and discharged him entirely from the payment thereof.

It is not easy to define the meaning of the testator in these contradictory provisions. By the doctrine applied by Vice-Chancellor Van Fleet in *Marshall's Exrs.* v. *Hadley, 50 N. J. Eq. (5 Dick.) 547,* the devise to testator's daughter of a lot in which

he had only the interest of a mortgagee would not pass the mortgage. If the devise, standing alone, could be construed to show an intent to discharge the land from the mortgage, that construction cannot be given to it, because of the subsequent contradictory and irreconcilable clause whereby that mortgage was bequeathed to his executors in trust for Albert, with a clear intent that it should be one of the sources from which the executors should receive income which was to be paid to Albert.

It remains to be considered what is the effect upon the bequest of this mortgage to his executors in trust for Albert, resulting from the subsequent clause of the same paragraph discharging Albert from liability for moneys advanced to him by testator. It is conceded, both by the bill and the answer of Albert, that the mortgage in question was made by Albert to testator to secure the repayment of such advances. The debts arising from such advances being wholly discharged at the death of testator, it results that the bequest of the mortgage which secured it passed to the executors no right or interest which was enforceable upon the land mortgaged.

Another question is presented respecting the meaning of the fourteenth paragraph, which reads as follows:

"*Fourteenth.* I hereby authorize and empower my executors hereinafter named, the survivors or survivor of them, in their discretion, to sell and convey and convert into money any and all of my real estate, not herein specifically devised, in fee-simple, except that devised to my beloved wife, Emma Lembeck, during her widowhood, no part of which shall be sold, except without her consent, and to be evidenced by her joining in the deed, and if any part thereof shall be sold the proceeds shall be held in trust by my executors, the income thereof to be paid to my said wife during her widowhood."

The executors seek to have determined upon what parts of the real estate of testator the authority to sell, conferred by this paragraph, has effect. The construction they attribute to it makes it apply to all testator's real estate not specifically devised in fee-simple, and particularly to lands devised in one way or another for the life use of testator's children, Katie, Albert and Victor. By the fourth paragraph testator had given to his wife

the income of certain buildings for so long as she should remain his widow. He had not specifically devised to her any interest in the lands on which the buildings stood otherwise than by the implication arising from the gift of the income. He had not specifically devised those lands in fee-simple to anybody. Yet by the clause immediately following he clearly indicates that those lands had been devised to his wife during widowhood, and he provided that a sale of her interest might be made with her consent, and her income was thereafter to come from the proceeds of the sale. In my judgment the words "in fee-simple," as used in this paragraph, are not intended to limit the previous phrase descriptive of real estate as "specifically devised" (from which phrase they are separated by a comma), but rather to describe the nature of the estate which the executors could transmit by sale. Conceiving that he had devised to his wife a life interest in certain lands by the gift of the income therefrom, testator proceeds to direct that the lands should not be sold without her consent, and that she should join in the sale and conveyance, and thereafter have the income arising from the proceeds of sale. But by other provisions of the will testator had devised estates for life. Such devises had been made to his executors, as trustees, for the benefit of Albert and Victor for life, and the remainders in each case had been devised. But there was a devise to Katie specifically for life, and there was no devise of the remainder except the residuary devise. If the construction of the executors should be adopted the life estate of Katie could be destroyed, and it would be at least doubtful whether there could be inferred to remain in her any right for life in the proceeds raised by the executors' sale, in the absence of any direction to that effect, especially as in the same paragraph testator had given direction that if sale of the land in which his wife had an interest should be made, she should have an equivalent interest in the proceeds of the sale. It results, I think, that the power of sale conveyed by the paragraph is a power to sell the remainders in the lands devised for life.

A further question is presented by the provisions of the fifteenth paragraph, which read as follows:

*"Fifteenth.* I direct that my unimproved real estate be sold within two years after my decease. Should any of my children desire to purchase any of such unimproved real estate, my executors may convey the same to them at a valuation to be proved by my executors, the survivors or survivor of them, in charge of the purchase price against the share of the child so purchasing."

What is "unimproved" real estate cannot be defined so as to be more explicit for the guidance of the executors. What may fall under that description can only be determined upon the facts of any particular case. In the absence of facts the question propounded admits of no instructions to the executors.

Another question has been presented by an amendment to the bill. It relates to the construction of the eighteenth paragraph of the will, whereby one of the eight shares into which the residuum is divided is given, after the death of Victor, to the brothers and sisters of Victor, including those of the half-blood, "in equal shares, the issue of any of them who may die leaving issue them surviving, to take the parent's share *per stirpes."*

It is conceded that, prior to the death of testator, one of Victor's brothers, viz., Henry T. Lembeck, died leaving two children him surviving, and the question is whether, in the division of the share set apart for the use of Victor during his life, the children of Henry will be entitled to one part.

In my judgment this question is prematurely asked. When the estate is ready to be divided parties not now in being may have an interest in it, and no opinion on it should be expressed.

A decree will be made in conformity with this opinion.