84 A.2d 148 (1951)
EMERSON
v.
CAMPBELL et al.
CAMPBELL
v.
EMERSON et al.
Civ. A. Nos. 221, 222.
Court of Chancery of Delaware, New Castle.
August 6, 1951.
Rehearing Denied November 6, 1951.
Robert C. O'Hora, of the firm of Melson & O'Hora, Wilmington, for plaintiff in the Bill for Instructions and the defendant Frank B. Emerson, individually, in the Petition for Declaratory Judgment.
Stephen E. Hamilton, Jr., of the firm of Young & Wood, Wilmington, for Alice P. Brown.
Clair John Killoran and David Snellenburg, II, of the firm of Killoran & Van Brunt, Wilmington, for Grace E. Campbell, as defendant in the Bill for Instructions and as plaintiff in the Petition for Declaratory Judgment.
*150 BRAMHALL, Vice Chancellor.
William O. Emerson and his brother Frank B. Emerson, as co-partners, operated a business at 304-6 Washington Street, Wilmington, Delaware, known as "Emerson Auto Parts", from August, 1945, until the partnership was dissolved by the death of William O. Emerson. On August 13, 1946, the said William O. Emerson and his brother Frank B. Emerson purchased the said property at 304-6 Washington Street, Wilmington, Delaware, taking title in their joint names as tenants in common. They paid for the property through a loan from the Commercial Trust Company, by a note jointly executed by them, and by a mortgage to the Newark Trust Company. From that time until the partnership was dissolved by the death of William O. Emerson, the partnership business was carried on by the brothers at that address.
The books of the partnership show that the property was carried as a fixed asset and the mortgage and judgment as liabilities; the cost of repairs, maintenance and taxes assessed against the real estate were carried as operating expenses.
On August 15, 1947, William O. Emerson, now deceased, and his brother, Frank B. Emerson, as equal partners, entered into a written partnership agreement, in which it was provided, inter alia, as follows: "In event of the dissolving of partnership, by death or otherwise, in order to determine the value of each partner's share in the business the figures of the last inventory shall be used. This figure shall be increased by the cost of all materials purchased subsequent to the date of such inventory until date of death or other dissolving of partnership; and decreased by the amount of all sales  less profit based on average mark-up. The resulting figure shall be considered the present inventory. The books of the partnership shall be audited by a public auditor who shall determine the value of each partner's share of the business."
In the next paragraph of said partnership agreement, relative to the purchase of the interest of a departing partner, it is provided: "The remaining partner shall be privileged to purchase the interest of the departing partner from him, or his heirs, by paying the value of his share at the rate of $250 monthly until the full value is paid."
On January 13, 1950, William O. Emerson made his Last Will and Testament, in which he provided, inter alia,
"(1) That his brother Frank B. Emerson should receive twenty-five per centum of testator's interest in the partnership business.
*151 "(2) That Alice P. Brown should receive certain personal property and the balance of a bank account.
"(3) The residue of the estate was devised and bequeathed to Frank B. Emerson, in trust, to manage and invest the same and to use the income therefrom and so much of the principal thereof to pay (a) to Alice P. Brown the sum of Six Thousand ($6,000) Dollars in equal monthly payments of Fifty ($50) Dollars each, said payments beginning three months after his decease; it being provided therein, however, that whenever the said trustee should be able to effect a final distribution of the estate, he should then pay to the said Alice P. Brown the balance of the bequest then remaining due; (b) to pay to his son, Stanley E. Emerson, the sum of Seventy-Five Dollars ($75) per month, beginning three months after his decease, for and during the term of his natural life, and, upon the death of the said Stanley E. Emerson, to continue to make said payments to testator's daughter Grace E. Campbell, her heirs and assigns, until the estate shall have been exhausted; (c) to pay to his said daughter, Grace E. Campbell, beginning three months after his decease, the sum of One Hundred Twenty-Five ($125) Dollars per month, together with any other sums as hereinbefore provided, until his estate shall have been "exhausted; (d) testator further provided in said trust that notwithstanding the provisions of paragraphs `b' and `c', his executor, at any time after he should be able to make a final distribution of his estate, should distribute the same as follows: three eighths to the said Stanley E. Emerson, absolutely; and five-eighths to his daughter Grace E. Campbell, absolutely, with the further provision that should his said son pass away at any time before testator's trustee shall be able to make a final distribution of his estate, the entire residue shall be paid to his said daughter, Grace E. Campbell. Testator's brother Frank B. Emerson was appointed as executor and trustee of his estate."
Frank B. Emerson, individually, contends, (1) that the option in the agreement comprehends the real property on which the business of the partnership was conducted; (2) that Article Second of the will also includes the real property of said partnership business.
Frank B. Emerson, as executor, in his Bill for Instructions, has requested the Court to rule as to the effect of Article Second and as to the applicability of the Rule Against Perpetuities as to Article Fourth.
Grace E. Campbell contends that neither the partnership agreement nor Article Second of the will comprehends the real estate and that Article Fourth of the will violates the Rule Against Perpetuities.
Alice P. Brown contends that that portion of Article Fourth of the will relative to her bequest should be sustained.
The Court is required in this case to determine, first, whether or not the real estate owned by the late William O. Emerson and his brother, Frank B. Emerson, as tenants in common, constitute a part of the partnership business known as "Emerson Auto Parts"; secondly, whether or not the provision in the partnership agreement relative to the option to purchase and the provisions of Article Fourth of the will violate the Rule Against Perpetuities and are therefore void.
The partnership agreement between the deceased and his brother Frank B. Emerson does not contain any inventory of the partnership assets, nor is there any reference therein of what these assets consist. In the absence of any definite written understanding between them, the question of whether or not the partnership assets include the real estate must necessarily therefore be determined by the action of the parties at the time of the purchase of the real estate and subsequent thereto. Johnson v. Hogan, 158 Mich. 635, 123 N. W. 891, 37 L.R.A.,N.S., 889; Steinmetz v. Steinmetz, 125 Conn. 663, 7 A.2d 915; Fairchild v. Fairchild, 64 N.Y. 471; 40 Am.Jur., Sec. 97, 196.
Under the pleadings and stipulation of counsel it is conceded that while the partners were engaged in the business known as "Emerson Auto Parts", they purchased, as tenants in common, the property at 304-6 Washington Street, Wilmington, *152 Delaware. They paid for the property by jointly signing a note to one trust company and a mortgage to another. From the time of the purchase of the real estate until the dissolution of the partnership it was used in the partnership business. The stipulated facts also show that the real estate was carried on the partnership books as an asset and the note and mortgage as liabilities; that the costs of repairs, maintenance and taxes assessed against the real estate were carried as operating expenses of the partnership.
Counsel for Grace E. Campbell lays great stress upon the use of the word "inventory", stating that the word "inventory" denotes personal property and does not include real estate, and that, while the word "interest" is usually an all inclusive term, its meaning is restricted by the agreement itself.
While it is of course true that the word "inventory" is normally used with respect to personal property alone, nevertheless, that is a matter of intention. In Bouvier's Law Dictionary, Rawle's Third Rev., page 1681 the word "inventory" is defined as follows: "A list, schedule or enumeration in writing, containing article by article the goods and chattels, rights and credits and in some cases the land and tenements of a person or persons". A somewhat similar definition is found in Webster's New International Dictionary. "An inventory is a statement of the assets of a decedent's estate. The obvious purpose of the requirements of an inventory is that those interested in the estate may know at as early a time as is practicable what are the assets of a decedent's estate."
In re Fulper's Estate, 99 N.J.Eq. 293, 132 A. 834.
In the case of Mezere v. Flory, 26 Wash. 2d 274, 173 P.2d 776-779, which was an action to quiet title, the Court said: "The primary purpose of an inventory is to furnish a list of the property which appears to belong to the decedent and a valuation thereof."
In the Mezere case the real estate was included in the inventory of the assets.
Moreover, the inventory of the partnership, dated May 10, 1950, carried the real estate as a part of the inventory.
It would therefore seem to be clear that in the use of the word "inventory" in the partnership agreement the deceased used the word in its broader sense as intending to include all of the assets of the partnership. Unless the "interest" of the deceased in the partnership is limited by a restricted use of the word "inventory", it would include the whole interest of the deceased in the partnership. However, the question of the proper definition of the words "inventory" and "interest" are only important in ascertaining the intention of the deceased at the time of the execution of the partnership agreement. From all of the surrounding circumstances of the case, it seems to be clear that the partners treated the real estate as partnership property and that the deceased intended to include it as a part of the interest of the partnership. The fact that title was taken in their joint names as tenants in common is unimportant, since at that time, prior to the passage of the Uniform Partnership Act in this State, title could not have been taken in the partnership name.
In the case of Steinmetz v. Steinmetz [125 Conn. 663, 7 A.2d 917], supra, the partners entered into articles of partnership which included a provision that, should either partner die during the term of the partnership, it should not be deemed dissolved but the assets should pass to the surviving partner, subject to payments to the widow of deceased. In addition to certain partnership real estate, the partners owned a farm in their own name as tenants in common. In an action for accounting brought by the widow of the deceased partner, the surviving partner filed a cross-complaint, claiming a declaratory judgment determining whether all of the real and personal property, including the farm in question, constituted assets of the partnership and as such passed to the defendant under the partnership agreement. It was shown that the farm in question was purchased by partnership funds, that the original investment and subsequent disbursements *153 for improvements and expenses appeared in a "Farm Account" in the partnership books and that, in most cases, the taxes were paid by the partnership and were claimed as deductions in the partnership income tax return. In holding that the farm was a part of the partnership assets, the Court said: "These indicia are enough to evince an intention to acquire and hold the farm as partnership property. While the fact that a partnership exists between parties in whose names the title to real estate stands will not of itself prevent them from being regarded as tenants in common therein (Sigourney v. Munn, 7 Conn. 11, 18), much depends upon their understanding and intention; circumstances such as purchase with partnership funds, and the course of their conduct and dealings, such as the carrying of income or expenses in the partnership accounts, are significant and may be determinative of status as a partnership asset. McKinnon v. McKinnon, 8 Cir., 56 F. 409, 413; Johnson v. Hogan, 158 Mich. 635, 651, 123 N.W. 891, 37 L.R.A.,N.S., 889; Fairchild v. Fairchild 64 N.Y. 471, 477; City of Providence v. Bullock, 14 R.I. 353; 47 C.J. 760; 1 Rowley, Modern Law of Partnership, §§ 282, 283."
In the case of Rice v. Pennypacker, 5 Houst. 279, where real estate was purchased by one of the partners in his own name, largely with the funds of the partnership, and where the liens upon the property were gradually being paid out of the partnership funds, the Court held that the real estate was subject to a resulting trust as partnership property, quoting Justice Storey, 5 Houst. at page 351, as follows: "In cases, therefore, where real estate is purchased for a partnership and on partnership account, it is wholly immaterial in a Court of Equity in whose name or names the purchase is made and the conveyance is taken * * *; * * *. In all cases, let the legal title be vested in whom it may, it is in equity the partnership property, not subject to survivorship and the partners are deemed the cestui que trust thereof".
The Court is therefore of the opinion that the property at 304-6 Washington Street is a part of the assets of the partnership.
With reference to the option to purchase given to the remaining partner under the partnership agreement, objection is made thereto, first, on the ground that it is a violation of the Rule Against Perpetuities, and, secondly, that it is unenforceable, by reason of the fact that the purchase price is not clearly indicated therein.
It is unnecessary to consider the latter of these objections, as the Court is of the opinion that the option is a violation of the Rule Against Perpetuities.
Options are regarded as having the effect of creating a future interest, depending upon the contingency of the exercise of the option. If it is possible that the option might not be exercised within the limits of the time allowed by the Rule Against Perpetuities, the option is void. Since in this case no time is given for the expiration of the option, it is void as against the Rule Against Perpetuities. Starcher Bros. v. Duty, 61 W.Va. 373, 56 S.E. 524, 9 L.R.A.,N.S., 913; Winsor v. Mills, 157 Mass. 362, 32 N.E. 352; London & S. W. R. Co. v. Gomm, L.R. 20 Ch. Div. 562; Barton v. Thaw, 246 Pa. 348, 92 A. 312.
A fair reading of the agreement between the deceased and his brother would seem to indicate that it was not expected by the parties that the option would likely be exercised at any time in the near future. Since options are usually considered as "property" and are therefore assignable, it is impossible to determine that this option might not be exercised, if at all, within the period prescribed by the rule against perpetuities.
In the case of Barton v. Thaw, supra, a covenant in a deed conveying coal underlying land provided that if the grantee, his heirs, or assigns, should at any time desire to purchase any of the land, the grantors would at any future time sell the same at a certain price. In a bill to remove the cloud on the title as a result of this option, the Court in holding the option to be void as contrary to the Rule Against Perpetuities, said, 92 A. at page 316: "According *154 to the terms of the option in the present case, the desire of the parties of the second part thereto, their heirs or assigns, to purchase any of the land mentioned, in fee simple, may be exercised by them at `any future time whatsoever.' By its terms the option may be accepted, as stated by counsel for the plaintiffs in their brief, at any time `before the sun grows cold, and the stars are old, and the leaves of the judgment book unfold.' The time is limited only by the confines of eternity. We cannot conceive of a more violent breach of the rule against perpetuities. Such an impress on land ought not to be sustained, and it cannot be. It isolates the property. It takes it out of commerce. It removed it from the market. It halts improvements. It prevents the land from answering to the needs of growing communities. No homes can be built or towns laid out on land so incumbered, because the land always remains subject to be taken under the option. It is not a matter which affects the rights of individuals only. The entire community is interested. The welfare of the public is at stake. It is contrary to the well-settled public policy of the state that such an option or right to purchase land should be held to be good. It was for the express purpose of destroying such serious hindrances to material and social prosperity and progress that the rule against perpetuities was brought forth. And the rule must be rigidly enforced."
The law with reference to options is set forth in Sec. 393, Restatement of the Law of Property, 2315, as follows:
"Subject to exceptions stated in Sections 373 (destructible interest), 395 (option in a lessee), 397 (charity) and 400 (unissued shares of a corporation), the limitation of an option in favor of a person other than the conveyor is invalid because of the rule against perpetuities when, under the language and circumstances of the limitation, such option
"(a) may continue for a period longer than the maximum period described in Sec. 374; and
"(b) would create an interest in land, or in some unique thing other than land, but for the rule against perpetuities."
It will be seen from an examination of the Sections of Restatement of the Law above referred to that the only exceptions to the Rule as above stated are (1) an interest which is destructable at the volition of the person having the power of destruction, (2) an option contained in a lease or renewal thereof, (3) where the conveyance validly limits property in favor of a charity, and (4) a limitation of the unissued shares or securities of a corporation. The option in this case clearly does not come within any of these exceptions. Therefore, applying the principles of law set forth in the Barton case and the yard-stick as set forth in Restatement of the Law, the option in this case is clearly a violation of the Rule Against Perpetuities.
In Article Second of the will deceased devised and bequeathed to his brother Frank B. Emerson twenty-five per centum of his interest in the business known as "Emerson Auto Parts". The contention is made that the partnership business did not include the real estate and that therefore Frank B. Emerson did not obtain any interest in the real estate by reason of this devise.
Since it has already been determined herein that the real estate was included in the partnership business, for the reasons hereinbefore set forth, it is now determined that the devise and bequest to Frank B. Emerson in Article Second of the will includes the real estate as a part of the partnership interest. Since the bequest to Frank B. Emerson is otherwise valid, that provision of the will will be enforced.
In Article Fourth of the will the testator devised and bequeathed his estate to Frank B. Emerson, in trust, first, to pay to Alice P. Brown the sum of Six Thousand Dollars in equal monthly installments of Fifty Dollars, beginning three months after his decease; provided, however, that whenever the trustee should be able to effect a final distribution of *155 the estate, he should then pay to the said Alice P. Brown the balance of the bequest then remaining due. Objection is made to this bequest on the ground that it also is a violation of the Rule Against Perpetuities, since the latter part thereof, according to the contention of counsel, would not necessarily occur prior to the time prescribed in the Rule Against Perpetuities.
In considering a case in which the question of the application of the Rule Against Perpetuities is involved, the following essential principles should be borne in mind:
1. The Rule Against Perpetuities is a peremptory command of law and not a Rule of Construction, its object being to defeat and not to carry out the intention of the testator.
2. In determining whether or not the Rule Against Perpetuities applies to a case each provision of the will or agreement should be construed as if the Rule did not exist and then to the provision so construed the Rule is to be remorselessly applied.
3. If there be two constructions as to each of which there is doubt, one consistent and the other repugnant to the law, the former will be adopted; but, if the meaning is clear, it must be adopted regardless of its effect upon the validity of the will.
4. Where testator fails to avail himself of lives in being and adopts a term of years, without reference to any life in being, the term cannot extend beyond twenty-one years from his death.
5. Courts should be careful not to strain the law so as to avoid the Rule Against Perpetuities, since it is founded upon a sound principle of public policy and should be rigidly enforced.
6. It is not enough that the future interests may, or even that it will in all probability, vest within the limits; it must necessarily so vest.
7. Where a will disposes of property upon trust for several purposes, some of which are valid and some void, the valid trust should not be disregarded unless the latter is so inseparably blended with the others that it cannot be eliminated without destroying the main intent of the trust or working a manifest injustice to the other beneficiaries.
Applying the above enumerated principles, the Court is of the opinion that the provision of the will relative to the monthly payments to Alice P. Brown, standing by itself, is not contrary to the Rule Against Perpetuities. The bequest is to a person in being at the time of testator's death; it also provides, in addition to the income, that so much of the principal as may be necessary shall be applied to such payments. The time of payment is therefore certain and within the Rule. It is not so inseparably blended with the provision providing for payment in full that it cannot be eliminated without destroying the main intent of the testator. It is not, therefore, in contravention of the Rule Against Perpetuities. Wilmington Trust Co. v. Wilmington Trust Co., 21 Del.Ch. 102, 180 A. 597, 603; Gray on Perpetuities (3d Ed.) Sec. 249-a.
The important question to be determined is whether or not the provision of the will relative to the payment of the balance remaining due after the executor is in a position to make distribution, is in violation of the Rule Against Perpetuities and therefore void.
The Court is also of the opinion that this provision does not violate the Rule Against Perpetuities. It is true that the majority opinion is that where there is a possibility that the estate may not be settled within the period of twenty-one years, the remainder over is void. However, upon reading the latter provision of the will relative to Alice P. Brown along with the first provision, it is clear that the second provision does not in any manner extend the time for the payment of this bequest. In fact, it accelerates the payment. Moreover, the fact that the time within which the estate is to be administered is uncertain is not, necessarily, of itself, in violation of the Rule Against Perpetuities. Brandenburg v. Thorndike, *156 139 Mass. 102, 28 N.E. 575; Lembeck v. Lembeck, 73 N.J.Eq. 427, 68 A. 337; Frost v. McCaulley, 7 Del.Ch. 162, 44 A. 779; Gray on Perpetuities, (4th. Ed.) Sec. 2141, p. 209.
Relative to the bequests to testator's children, Stanley E. Emerson and Grace E. Campbell, under Article Fourth of the will, it will be noted that under this provision of the will testator directed his trustee to pay to his children an income for life and then upon the distribution of his estate to pay to them the principal absolutely. It will also be noted that the proportion of the residuary estate received by each child is the same as the proportion of income given to each child prior to the distribution of the corpus of the estate. It would therefore seem that it was the intention of the testator that his children should receive the corpus of his estate after the trustee was in a position to make final distribution and that in the meantime, pending the distribution of his estate, they should receive the same proportion of income.
The Rule Against Perpetuities is a rule against postponing the vesting of assets beyond the period prescribed in the Rule and is not applicable to their possession or enjoyment. 22 Am.Eng.Enc. 703; Brandenburg v. Thorndike, supra; Seaver v. Fitzgerald, 141 Mass. 401, 6 N.E. 73; Howe v. Morse, 174 Mass. 491, 55 N.E. 213; Redfield on Laws, 846.
In the case of Lembeck v. Lembeck, supra, the testator provided that, unless his executors should consider it advisable, they should not sell or divide certain stock therein referred to until twenty-five years after his decease. Testator further provided, in the meantime, while such stock should be held by his executors, that the dividends therefrom should be divided in the same manner and proportion and for the same purpose as provided in the distribution of his residuary estate. Testator also provided that when such stock was sold or disposed of, all the proceeds thereof, or after the period of twenty-five years, the stock or proceeds thereof should become and constitute a part of testator's residuary estate and be disposed of as such. The Court held that the stock passed by the residuary devise and bequest and was vested in those who were to receive the residuary estate and that the retention of it by the executors as trustees for a period not exceeding twenty-five years was a mere postponement of the possession and did not affect the vesting of the interest in that stock.
In the case of Brandenburg v. Thorndike, supra, the testator gave the residue of his estate, upon trust, to pay an annuity to his wife during her life, out of the net income and upon her death to add the balance thereof to the capital. Testator further provided "At the expiration of three years from the death of my wife, or at [any] such time, whether earlier or later, as may in the discretion of the trustees, be found expedient and practicable for the final settlement and distribution of my estate, the trustees shall pay, convey, and transfer said fund in equal shares" to certain nephews and nieces then surviving or their issue. In holding that the bequests to the nephews and nieces were not void for remoteness as postponing the vesting of the assets given them until more than twenty-one years after the death of the widow, the Court said: "Taking the view most favorable to the plaintiffs, the discretion of the trustees to delay the payment after the expiration of the three years is limited to such time as is reasonably necessary to settle the estate. They could not delay longer without violating their duty, and in case of unreasonable delay they would be compelled by a court of equity to make the payment and transfer. In no contingency could it be necessary or reasonable to delay the settlement and distribution of the estate for 21 years after the death of the widow. The estates of the nieces and nephew must vest within the limitation of time prescribed by the law against perpetuities, and the bequests therefore, are not void for remoteness".
The above case was cited with approval in Gray on Perpetuities, (4th Ed.), Sec. 214C, but it is criticized in 51 Harvard Law Review, page 638.
*157 In the case of Frost v. McCaulley [7 Del.Ch. 162, 44 A. 780], supra, testator devised his entire estate to trustees, to apportion into equal shares among his heirs, but fixed no time for the division of the estate. The executors were empowered to pay any of the children such sums of money as they might need before the estate was settled, such payments to be treated as part of the income of their respective shares. The investment of each share and the payment of the income arising therefrom was provided for. The estate was to be apportioned or separated into shares on the death of the testator and one of the legatees was to receive the income of her share semi-annually for ten years, and after that time the principal absolutely. In holding that such share was a vested legacy, the Court said: "The first step in the determination of this question is to ascertain the time when the division of the estate, as directed by the will, was to take place. As no definite time was fixed by the testator, it becomes the duty of the court to fix such time as will best aid in carrying into effect the uses, intents, and purposes for which the trust created in the second item of said will was established. By conferring on his executors and trustees the power to pay to any of his children such sum or sums of money, from time to time, before the estate was settled, as any of them might need, and such payments to be treated as part of the income of their respective shares, the testator clearly indicated that the division of the estate should be made, or be considered as made, before the final adjustment or settlement of the same. * * * To concede that the time for the division of the estate would be immediate after the final settlement thereof would make the enjoyment of each gift contingent upon the sloth or diligence of the executors, and might result in partial or total defeat of the intention of the testator, as to one or all of his beneficiaries, especially those whose interests are coexistent and co-terminous with their lives. There is therefore not a shadow of reason for imputing such an intention to the testator".
It is not necessary to determine the exact time of the vesting of testator's estate. Neither is it necessary to adopt, in toto, the Massachusetts authority above cited. The only lapse of time after the creation of the life estates is in testator's direction to the trustee to pay the corpus of his estate to Emerson and Campbell "at any time when he shall be able to make a final distribution". There is nothing before the Court to indicate that the time required for distribution would be longer than usually required in similar estates. The Court is therefore of the opinion that the provisions in Article Fourth of the will, relative to Emerson and Campbell, taken as a whole, do not violate the Rule Against Perpetuities.
An Order will be entered on notice in accordance with this opinion.