## Asa D. Phillips

### *v.*

### Adrian Vermeule et al.

[Submitted November 13th, 1917.    Decided December 15th, 1917.]

1. The statute of New Jersey executing simple trusts (*2 Comp. Stat. p. 1536* § 7) does not execute a trust to convey.

2. Where complainant has been in possession for thirty-five years and the right of action has existed for fifty years, the right to charge the property with a trust *ex maleficio* is barred by laches and the statute of limitations.

3. Under the evidence in this case, the answer that a will had disappeared in 1856 and was not found until just before this suit was commenced, is insufficient to overcome laches.

4. A formal averment in a pleading is nugatory when refuted by the specific facts pleaded.

5. The presumption that trustees had conveyed the property as directed by the will prevails where the right to an accounting was lost by laches and limitations.

On bill, &c.

*Mr. Josiah Stryker,* for the complainant.

*Mr. Adrian Vermeule,* for the defendants.

BACKES, V. C.

This bill is to quiet the title to "Long Brook Farm" and a strip of land used as a roadway, known as "Hard Scrapple," in Franklin township, Somerset county. Motion is made to strike out the answer because it sets up no estate or interest in the defendants.

The answer discloses that Miles Smith was the owner in fee at the time of his death in 1838. By his will, proved before the ordinary, he devised the premises to his four sons, as joint tenants, in fee-simple, in trust, to occupy them and to receive the rents, issues and profits and pay the net income to his daughter Henrietta during her lifetime, thence to her surviving husband during his lifetime, and upon their death to convey them in equal shares to the children of Henrietta and the issue of any deceased child *per stirpes.* Henrietta occupied the farm during her lifetime. She married Reni A. de Russy and survived him, dying in 1882, leaving four children, under whom, by mesne conveyances, the complainant holds, and from them down his chain of title is perfect. He and his lessors have always been in peaceable possession.

After making other devisees, not necessary to be mentioned here, the testator gave $5,000 to his four sons in trust for the widow of a deceased brother for life, over to her four children for life, principal to fall into the residue of the estate. The residue of his personal estate he bequeathed to his four sons and four daughters in equal shares, the daughters' shares to be held in trust by two sons, Miles and Hatfield, in default, by his two other sons, Franklin and Digby, as substituted trustees, the interest whereof was to be paid to them during life, with remainder to their lawful issue, and on failure of issue alive at their death to his surviving children, and to the issue of deceased children *per stirpes.* The testator died possessed of personal property of

upwards of $100,000, and intestate of a tract of land in New York state of the value of $24,000. Miles Smith, the testator's oldest son, was the active trustee until 1856, when, overtaken by misfortune, he, by various means, diverted what remained of the trust estates into the hands of Reni de Russy, the husband of Henrietta. About the same time Reni de Russy acquired, through mesne conveyances from the heirs-at-law of the testator, title to the land in New York state. Reni de Russy died intestate in 1867. Letters of administration were granted to his son Thomas, to whom passed the remnants of the trust estate and later was distributed among Reni de Russy's widow and her four children. The farm in New York also descended to them as heirs-at-law. The trustees refused to convey "Long Brook Farm" to them, as directed by the will, because they failed to account for the trust fund. Three daughters and three sons of the testator died unmarried. The defendants are his great grandchildren, descendants of his son Hatfield, their immediate progenitors being Osceola, who died in 1915, and Harriet, son and daughter of Hatfield. One of them, Miles Smith, son of Osceola, is the common law heir of the surviving trustee.

The theory upon which the defendants build their claim is that the legal title to the lands in controversy is in the heir (primogeniture) of the surviving trustee, upon special trust unexecuted; that he cannot be called upon to execute the trust because the *cestuis que trust* have refused to account for the trust funds, and that because of this, the title, legal and equitable, is in the trustee for the benefit of the will. As against this the complainant contends that upon the death of Henrietta, the trust, which up to that time had been active, became a simple use which the statute (*Comp. Stat. p. 1536 § 7*) executed in the *cestui que trust,* and therefore the equities set up by the defendants cannot impair the legal title thus vested in them. I apprehend that this is not admissible, in view of the legal construction to be accorded to the language creating the trust. The devise is to the trustees as joint tenants in fee-simple, to occupy and to collect and pay over the net income, and upon an event, certain, *to convey.* The use was executed in the trustees to enable them to discharge these duties, and the trust comes within

the third rule of construction, excepting trusts *to convey* from the operation of the statute of uses. *Lew. Trusts (Flint) 290; Perry Trusts (6th ed.) 520.* To vest the legal estate in the *cestuis que trust* requires a conveyance which a court of equity may decree in execution of the trust. *Lew. Trusts 921; Perry Trusts 576.* The reason for the rule in its application to trusts like the present one is so narrow and technical and unappealing as to strongly tempt one to resort to circumvention or to entirely ignore it. The difference between a trust to convey and a trust to the use, seems almost evanescent, but the distinction is recognized by text-writers, upon the authority of eminent judges, and cannot be disregarded. *Garth* v. *Baldwin, 2 Ves. Sen. 647; 28 English Reprint 412; Mott* v. *Buxton, 7 Ves. Jr. 201; 32 English Reprint 81; Doe* v. *Scott, 4 Bing. 505; 130 English Reprint 862; Doe* v. *Field, 2 B. & Ad. 564; 109 English Reprint 1252; Doe* v. *Edlin, 4 Ad. & E. 582; 111 English Reprint 906.*

On the death of the life use, the legal and equitable estates were in the trustees and the *cestuis que trust,* respectively, and if, even at that time, the trustees were in position to have enforced the equities here asserted, it is not to be assumed that the right is still intact and the remedy available, for it must be evident that at this remote period the determination of the controversy admits of other considerations. The defendants and those under whom they claim have slept so long upon their rights that they must be charged with gross laches as well as barred by the statute of limitations. It was before the civil war that Reni de Russy became chargeable with the trust *ex maleficio,* and fifty years have elapsed since the right of action against his children accrued, and the complainant and his lessors have been in possession of the farm for thirty-five years. During all of that time the defendants, and those whom they succeeded, stood complacently by without the slightest protest or complaint. They cannot now be heard to revive their stale claim. Both the statute and the doctrine of laches confront them. *Dean* v. *Dean, 9 N. J. Eq. 425; McClane* v. *Shepherd, 21 N. J. Eq. 76; Hendrickson* v. *Hendrickson, 42 N. J. Eq. 657; Dyer* v. *Waters, 46 N. J. Eq. 484; Condit* v. *Bigalow, 64 N. J. Eq. 504; Quairoli* v. *Italian Beneficial Society, 64 N. J. Eq. 205; Van Houten* v. *Van*

*Winkle, 46 N. J. Eq. 380; Heinisch v. Pennington, 73 N. J. Eq. 456; affirmed, 75 N. J. Eq. 606.* Apt is this language of Mr. Justice Dixon in *Hendrickson* v. *Hendrickson:* "The case she presents is one of implied constructive trust only. *3 Pom. Eq.,* §§ *1030, 1044.* In cases of this nature, relief is refused to a party who comes into a court of equity after long acquiescence, and that not only in circumstances where the length of time would render it extremely difficult to ascertain the true state of the fact, but also where the true state of the fact is easily ascertained, and where it is perfectly clear that relief would originally have been given upon the ground of constructive trust. *Beckford* v. *Wade, 17 Ves. 88, 97.* What that reasonable time is, within which a constructive trust can be enforced, depends on the circumstances of the case. Generally speaking, where a party has been guilty of such laches in prosecuting his equitable title as would bar him if his title were solely at law, he will be barred in equity, from a wise consideration of the paramount importance of quieting men's titles, and upon the principle, *'Expedit reipublicæ ut sit finis litium;'* and there can be few cases where relief will be granted after twenty years' peaceable possession by the person who claims in his own right, but whose acts have made him a trustee by implication."

In a paragraph of the answer, the defendants set up that prior to April 12th, 1856, the will of the testator disappeared from the files of the prerogative court, and that neither the original nor a provable copy could be found "until shortly before the bringing of this suit and some time subsequent to the several transactions through which the complainant is seeking to establish his bill for relief." This, evidently, was intended to explain and excuse the delay, although there is no averment to that effect. It is not alleged that the defendants, or those under whom they claim, were not fully advised of their rights or that by reason of the loss of the will they were unable to assert and establish them seasonably; and if it is meant that these results are to be inferred, then the averment is bad, because it is indefinite and argumentative. That the original will could not be found "until shortly before the bringing of this suit, and some time subsequent to the several transactions through which the complainant is

seeking to establish his bill for relief," may mean one year or
twenty-five years ago, when we consider the relation to the years
that have elapsed since 1856 (as a fact the will was restored to
the files in 1870). Furthermore, the averment that during all
of this time no provable copy could be found, appears to be un-
true from other statements in the answer. It appears by the
answer that in December, 1859, one John Terhune, a creditor of
the testator, filed a bill in this court against the surviving execu-
tors and Reni de Russy to reach the trust estate as in the latter's
hands in fraud of creditors. The manner in which the bill and
answer thereto are set up and referred to, bring them within the
pleadings in this case, and may be looked into on this motion.
Upon examination I find annexed to the bill a copy of the will
of the testator, which Reni de Russy, in his sworn answer, admits
to be a true copy. Osceola Smith and Harriet Smith, the parents
of the defendants, were parties to that suit and charged with
notice. A formal averment refuted by the facts set up is nuga-
tory. *Redmond* v. *Dickerson, 9 N. J. Eq. 507, 516.*

With the right to an accounting lost to the defendants, the
allegation that conveyance of the legal title had not been made
by the trustees, is reduced to a mere conclusion and impotent
against the presumption that the trustees had executed their
trust and conveyed as directed by the will. The presumption
predominates in law and in equity unless facts alleged exclude
its operation. Here there are none. The complainant could
maintain an action in ejectment against the trustees, and the
jury would be controlled by the presumption in spite of proof
to the contrary. In *Baxter* v. *Baxter, 43 N. J. Eq. 82,* involving
a somewhat similar devise in trust, Vice-Chancellor Van Fleet
said: "The rule is well settled that where lands are conveyed or
devised to a trustee, to be held until the *cestui que trust* reaches
a certain age, and then to be conveyed to him, if the trustee fails
to pass the legal title at the time when the *cestui que trust* is,
by the terms of the trust, entitled to it, and his right to the pos-
session of the lands is resisted, he may recover possession by
ejectment, on the presumption that the trustee has done his duty
and made over the legal title to him. Courts of law are now at

liberty whenever it appears that the trusts upon which the lands were held have been fulfilled, so that it has become the duty of the trustee to transfer the legal title to his *cestui que trust,* to presume, following the rule in equity, that that shall be considered as done which ought to have been done—that the trustee has conveyed the legal title to his *cestui que trust.* Such presumption is made in order to prevent a just title from being defeated by a mere matter of form." Citing *Obert* v. *Bordine, 20 N. J. Law 394; Brown* ads. *Combs, 29 N. J. Law 36.* See, also, *Commissioners* v. *Johnson, 36 N. J. Eq. 211; Jason* v. *Johnson, 74 N. J. Law 529.*

Now, if upon a trial of the issue it is to be presumed as a matter of law that the trustees performed their duty, the presumption necessarily must prevail on demurrer or motion to strike out, when no additional matters are pleaded justifying the withholding of the title, notwithstanding allegations to the contrary and the rule that all relevant matters well pleaded are admitted as true. *Olden* v. *Hubbard, 34 N. J. Eq. 85.*

The answer will be stricken out, with costs, and the complainant may take a decree.