"Fifth. All the rest, residue and remainder of my estate of whatsoever nature and wheresoever found or situate I give, devise and bequeath unto my said son-in-law, Lucius du Bignon Clay, and The National Newark and Essex Banking Company of Newark, hereinafter named as executors of this will, in trust nevertheless for and upon the following uses, purposes and trusts, that is to say:
"To hold, invest and reinvest the same and to collect the issues, profits, interest and income thereof and therefrom, and after deducting all proper charges and expenses in the maintenance and administration thereof to pay out of the net income thereof and therefrom the sum of six thousand dollars [$6,000] per annum to my daughter Margaret [generally called Marjorie] A. Clay in equal quarterly or other convenient periodical payments until the date on which the earliest of the three following anniversaries shall be reached, viz.:
"(a) The twenty-first anniversary of the birth of such female child of my said daughter as shall first attain said age of twenty-one years.
"(b) The twenty-first anniversary of the birth of such male child of my said daughter born after my death as shall first attain said age of twenty-one years.
"(c) The thirtieth anniversary of the birth of such male child of my said daughter born before my death as shall first attain said age of thirty years.
"Upon the date on which the earliest of the three aforesaid anniversaries shall be reached I direct my aforesaid trustees or the survivor of them to —
"(1) Set apart, establish and create thereout and therefrom a trust fund which in the sole judgment and discretion of my said trustees or the survivor of them shall be sufficient in amount and character of securities to produce an annual net income of six thousand dollars [$6,000] and to hold, invest and reinvest said trust fund and to collect the issues, profits, interest and income thereof and therefrom and after deducting all proper charges and expenses in the maintenance and administration thereof to pay the net income to the extent of six thousand dollars [$6,000] annually to my said daughter, Margaret A. Clay, in equal quarterly or other convenient periodical payments, for and during the term of her natural life.
"Immediately upon the death of my said daughter, Margaret A. Clay, I direct my aforesaid trustees or the survivor of them to apportion and divide the aforesaid trust fund into so many portions or shares of as nearly equal value to each other as in the sole discretion of my said trustees or the survivor of them may be determined, as shall equal the number of children of my said daughter then living, and to transfer, convey and pay over one of such separate shares or portions with all accumulated income thereon to each of such children, provided, however, that if upon the date of the death of my said daughter, Margaret A. Clay, there be any female child or children of my said daughter who shall not then have reached the age of twenty-one years or any male child or children of my said daughter who shall not then have reached the age of thirty years, then I direct my *Page 483 
aforesaid trustees or the survivor of them to hold so many of such portions or shares as shall equal the number of such female child or children as shall not then have reached the age of twenty-one years and the number of such male child or children as shall not then have reached the age of thirty years and to separately invest and reinvest the same and accumulate the issues, profits, interest and income thereof and therefrom and when any such female child shall reach the age of twenty-one years or any such male child shall reach the age of thirty years to deliver, transfer and pay over to her or him respectively one of such separate portions or shares with all accumulated income thereon, provided further, however, anything herein contained to the contrary thereof notwithstanding that the delivery, transfer and payment of each and all of such separate portions or shares shall be made in any event within twenty-one years from the date of the death of my said daughter.
"(2) To hold, invest and reinvest the remainder of my estate after the setting apart, establishing and creating of said trust fund mentioned in sub-paragraph (1) of this, the fifth clause of my will, and to add thereto from year to year any excess of income over the sum of six thousand dollars [$6,000] which may be derived from the trust fund hereinabove created in said sub-paragraph (1) of this, the fifth clause of my will, and to collect, accumulate, invest and reinvest the issues, profits, interest and income thereof and therefrom until the date on which the earliest of the three following anniversaries shall be reached, viz.:
"(a) The twenty-first anniversary of the birth of such female child of my said daughter as shall first attain said age of twenty-one years.
"(b) The twenty-first anniversary of the birth of such male child of my said daughter, born after my death, as shall first attain said age of twenty-one years.
"(c) The thirtieth anniversary of the birth of such male child of my said daughter, born before my death, as shall first attain said age of thirty years.
"Upon the date on which the earliest of the three aforesaid anniversaries shall be reached I direct my aforesaid trustees or the survivor of them to apportion and divide all of the trust fund created by this sub-paragraph (2) of this, the fifth clause of my will, into so many shares or portions of as nearly equal value to each other as in the sole discretion of my said trustees or the survivor of them may be determined, as shall equal the number of children of my said daughter then living, and to transfer, convey and pay over one of such separate shares or portions with all accumulated income thereon to each of such children; provided, however, that if upon the date on which the earliest of the three aforesaid anniversaries shall be reached there be any female child or children of my said daughter who shall not have reached the age of twenty-one years or any male child or children of my said daughter who shall not have reached the age of thirty years, then I direct my aforesaid trustees or the survivor of them to hold so many of such portions or shares as shall equal the number of such female child or children as shall not then have reached the age of twenty-one years and the number of such male child or *Page 484 
children as shall not then have reached the age of thirty years, and to separately invest and reinvest the same and to collect, accumulate, invest and reinvest the issues, profits, interest and income thereof and therefrom, and when any such female child shall reach the age of twenty-one years or any such male child shall reach the age of thirty years, to deliver, transfer and pay over to her or him respectively one of such separate portions or shares with all accumulated income thereon; provided further, however, anything herein contained to the contrary thereof notwithstanding that the delivery, transfer and payment of each and all of such separate portions or shares shall be made in any event within twenty-one years from the date of my death.
"It being my express wish and desire that only the living child or children of my said daughter, Margaret A. Clay, and not the issue of any deceased child of my said daughter shall take under the provisions of sub-paragraphs (1) and (2) of this, the fifth clause of my will, anything therein contained indicating or tending to a contrary or different interpretation or construction notwithstanding, I expressly direct that if any child of my said daughter should die before the time when he or she shall become entitled to the actual possession and enjoyment of any separate portion or share mentioned in either of said sub-paragraphs, then and in such event his or her separate portion or share shall be apportioned and divided into so many portions or shares of as nearly equal value to each other as in the sole discretion of my said trustees or the survivor of them may be determined, as shall equal the number of children of my said daughter him or her surviving, and one such portion thereof shall be added to each of the separate portions or shares of such surviving children of my said daughter."
Thus, John McKeown disposed of the residue of his estate. He died November 12th, 1927, survived by two daughters, the complainant and her sister, Margaret A. Clay, and Mrs. Clay's two sons, now nine and seven years of age, respectively.
The will made no provision for the complainant, and she filed this bill praying that the trust be declared invalid as contravening the rule against perpetuities, and that the trustees be decreed to hold the residuary estate for the heirs and next of kin of the testator. Mrs. Clay joins the complainant in resisting the motion to strike the bill.
The validity of the trust to pay the annuity to Mrs. Clay for life is not in question. The gift of the remainder, to her children, is the object of the attack. It is urged that it is void under the rule because it is not to vest until —
"(a) The twenty-first anniversary of the birth of such *Page 485 
female child of his daughter Margaret as shall first attain said age of twenty-one years, or until
"(b) The twenty-first anniversary of the birth of such male child of said daughter, born after his death, as shall first attain said age of twenty-one years, or until
"(c) The thirtieth anniversary of the birth of such male child of said daughter, born before his death, as shall first attain said age of thirty years,"
and that the first of these events may happen after the period limited by the rule * * * lives in being and one and twenty years. The testamentary scheme is simple enough. After setting up the residue of the estate in a trust, the testator gave to his daughter, Mrs. Clay, $6,000 for life, to be paid out of the income until the occurrence of the first of the three events, and thereafter from the income of a part of the same residue, to be set up in a separate trust, sufficient to produce that sum. The principal of the latter he gave to her children living at the time of her death, each a proportionate share. The remainder of the residuary estate he gave to her children living at the time of the occurrence of the first of the same three events, proportionally. It resolves itself into this: That if at that period the daughter be dead, the entire trust intact, set up by the fifth paragraph of the will, is to be distributed among her then living children. It is only in case she survives that enough of the residue is to be set up in separate trust to insure the payment of her annuity. The trust for the daughter, first of the whole and then of part of the residue of the estate, is not dependent upon any future event. The amount only is to be reduced, and as reduced re-set up if one of the three events happens in her lifetime. The trust, of the greater or lesser sum, is to continue as long as she lives, and there is no room for serious discussion that upon her death the fund, as reduced, vests immediately in her surviving children.
The gift to the daughter's children living at the happening of the first of the three events is independent of the trust to secure the lifetime gift to the daughter, for, in whatever form *Page 486 
the fund may exist from time to time, only the sum of it is affected by the daughter surviving the event. The life of the daughter plays no part in the gift to her children. If the gift were conditional upon the event alone it would undoubtedly be bad for remoteness for it is possible that it would not happen and the gift therefore not vest within twenty-one years after the death of the testator. The vesting is contingent upon the event. The daughter had no female child and her eldest son was, when the will took effect, but eight years of age, and besides he might have died before reaching thirty. The testator tied up his estate as long as he dared, evidently with the aid of a skilled lawyer, and he guarded against the possibility of violating the rule by providing that payment of the gift shall be made in any event within twenty-one years from the date of his death. He advanced the day of vesting to come within the rule. In other words the gift was to vest, per share, in the children of his daughter living on the twenty-first anniversary of his death, if perchance it did not otherwise vest within the time fixed by law. And he did not stop there, but directed the several shares, at all events, however postponed as to vesting or payment, to be actually paid over — as to so much of the estate in which his daughter may have a life beneficiary interest within twenty-one years of her death and the remainder, in which a life is not involved, within twenty-one years of his death.
The direction that if at the occurrence of the event a child be under the required age the trustees shall hold its share until it arrives, does not affect the vesting; the enjoyment alone is postponed. Lembeck v. Lembeck, 73 N.J. Eq. 427; Fidelity-UnionTrust Co. v. Rowland, 99 N.J. Eq. 72.
The provision that if at the period of vesting a child is not of the receiving age and should die before arriving its share should be divided between the remaining children would, in the circumstances, effect a divestiture with a gift over. Obviously, the testator intended that his estate should be enjoyed by the generation of his daughter's children exclusively, and, consequently, only by those living at the time variously fixed for its distribution, in shares. However otherwise remote this *Page 487 
may be in the different instances, the provision that in the extreme it should be within the time limited by the rule against perpetuities precludes an attack upon the gift of the residue on that score.
So much of the residue retained and set up as a trust for the protection of the daughter's annuity may produce more than the requirement, and it is suggested that as to any excess of income there is intestacy, inasmuch as only the principal of that portion is to go to her children living at her death. The will provides that the excess is to be added to the remainder trust. The fact that the remainder trust is to be distributed to the children coincident with the creation of the trust from which the excess may later flow is not inconsistent with the gift of the excess as part of the remainder trust, though it may accrue after the period of distribution. As it accrues it is to be apportioned as the remainder trust is directed to be distributed.
The bill will be dismissed.