Dr. Leslie D. Ward intended to divide his fortune equally between his son, Leslie P. Ward, and Helen Ward Dignan, daughter of a deceased son, and to that end, by his last will and testament, after pecuniary bequests, gave —
"Sixth. All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever the same may consist and wheresoever the same may be found, I give, devise and bequeath to my executors hereinafter named, in trust nevertheless, to invest and reinvest, to collect the rents, issues and profits thereof, and to pay and distribute the same as follows:
"1. To pay to my son, Leslie P. Ward, from one-half of the net income arising from the said residue of my estate" (Then follows a gift of one-half the estate in the same phraseology as the other half is given to the granddaughter as follows:)
"LL. To pay to my granddaughter, Helen Ward, or to her lawful guardian, from the other one-half of the net income arising from the said residue of my estate the sum of $10,000 annually to be paid in equal quarterly payments, and any such further sum not exceeding the balance of the said one-half of the said income arising from the said residue as shall seem to my executors in their absolute discretion necessary, advisable or for her benefit and advantage until she *Page 752 
shall have attained the age of fifty years, and then to assign, transfer and set over to her four-fifths of the said one-half of the said residue, together with all accumulations of interest thereon, paying the income on the remaining one-fifth of the said one-half of the said residue to her during her natural life, and upon her death to pay the remaining one-fifth of the said one-half of the said residue to such person or persons as according to the then existing laws of the State of New Jersey would have been entitled to take the same in distribution as my next of kin if I had died intestate, owning the same as personalty at the time of my granddaughter's death, in such shares and proportions as they would have been entitled to take the same.
"If my said granddaughter die before attaining the age of fifty years, leaving lawful issue her surviving, then to divide the said one-half of the said residue, together with all accumulations of income thereon, among the surviving children of my said granddaughter and the issue of any deceased child or children per stirpes, and to assign, transfer, pay and set over to such of her said issue as shall have attained the age of twenty-one years the proportionate share of said one-half of said residue which they would each respectively be entitled to receive. In case any of her said issue shall not at the time of the death of my said granddaughter have attained the age of twenty-one years, then the part or portion of my said estate to which they would be respectively entitled shall be held by my said executors in trust, to pay the income therefrom to them until they shall respectively attain the age of twenty-one years, and then to assign, transfer, pay and set over to them their respective shares. In case any of the issue of my said granddaughter shall survive her but shall die prior to attaining the age of twenty-one years, in that event the part or portion of my estate which they would have been entitled to receive had they attained the age of twenty-one years shall be disposed of as though said issue had predeceased my said granddaughter.
"Should my said granddaughter die prior to attaining the age of twenty-five years, without leaving lawful issue her surviving, in that event the said one-half of the said residue of my estate, together with all accumulations of income thereon, shall become the share of my said son, Leslie P. Ward, should he survive her, and shall be held under the trusts and disposed of in accordance with the provisions made for him in this my said will."
Then follows a paragraph, the counterpart of this one in the son's gift:
"3. Should my said son die prior to attaining the age of fifty years, without leaving lawful issue him surviving, in that event I do direct my said executors to pay from the said one-half of the said residue of my said estate such part or portion thereof not exceeding in the aggregate, however, one-half of the said one-half of the said residue, to such person or persons as my said son shall by his last will and testament, lawfully executed, designate and appoint, in such amounts, *Page 753 
shares, interests and proportions, absolutely or in trust, as in my son's said will may be provided. The balance of the said one-half of the said residue of my said estate, together with any part or portion not disposed of by my said son under the power herein given to him, shall become the share of my granddaughter, Helen Ward, should she survive him and to be held under the trusts and disposed of in accordance with the provisions made for her in this my said will."
The penultimate paragraph of the will reads:
"Should both my said son, Leslie P. Ward, and my said granddaughter, Helen Ward, die without leaving lawful issue, then I do order and direct that all the rest, residue and remainder of my said estate then remaining in the hands of my said executors, including any part thereof not disposed of by my said son or my said granddaughter by will under the power herein given to them, be divided as follows:" (Then follows gifts over to various persons.)
Leslie P. Ward, testator's son, died before arriving at the age of fifty years, without issue. He exercised the power of appointment. Helen Ward Dignan is twenty-four years of age and has two children. She was six when Dr. Ward died in 1910. Her share of the residue inventoried $1,359,988. This was increased by one-half of Leslie P. Ward's share, $856,171, on his death without issue; a total of principal, $2,216,159. The accumulations of income on the principal amount nearly to two million dollars. Helen lays claim to it and if it is denied she asks that the income on the one-half of Leslie P. Ward's share ($856,171) be paid to her and that all the accumulations be capitalized and the future income thereon paid to her. The trustee paid to her $10,000 a year during the earlier periods and gradually increased the allowances until in 1928 she received the annual income on her share of the residue, upwards of $85,000. She complains that this is not equal to her conveniency and prays that the trustee be directed to exercise its discretion and give her more. The surviving trustee prays directions.
(a) The trustee's present allowance of the annual income of her share of the residue of the estate is approved and an indefinite continuance, upon the status quo, is sanctioned. *Page 754 
If upon the facts before it, and now presented to the court, the trustee were inclined to increase the amount, its action would be beyond judicial criticism; but if it declined, the court would be reluctant to suggest greater indulgence. A mandate to revise its judgment would be an unjustifiable interference with a discretion committed to the trustee, and so far wisely and liberally executed. Read v. Patterson, 44 N.J. Eq. 211. The court, however, is in sympathy with Mrs. Dignan's desire for an estate at Princeton and the trustee should lend a willing ear to her appeal. Her plans are still in the formative stages. Upon submitting a definite program the court will co-operate with the trustee in arranging an adequate allowance. The available funds to her credit are more than ample and justify her aspirations, as will be presently explained.
(b) Helen has a vested estate in the corpus and income held in trust for her. By the primary gift of the residue of the estate to the executors it was taken out of the testator's estate and given to them as trustees. They were charged to hold it for the testator's son and his granddaughter in equal parts until each arrived at the age of fifty years. There was a perfect gift of the legal estate to the trustees and a complete equitable gift to the cestuis. The legal title to the residuary estate vested forthwith in the trustees, the equitable title in the cestuis;
the equitable title subject to being divested if they die before the period of distribution. That the trustees were to hold it for a time instead of paying it over at once simply deferred the enjoyment of the thing given. The meantime income, increments of the residuary estate, likewise vested in future possession. It is true, as argued, that there was no immediate gift to thecestuis of the entire income, and that doling out of any excess over $10,000 annually was left to the discretion of the trustees, and further that the cestuis were not of right entitled to the use of the excess before reaching fifty years, but these incidents did not prevent the income from vesting under the antecedent gift to the trustees, and therein a gift to thecestuis of their share of the income eventually. Where time is annexed *Page 755 
to the payment, as here, the legacy is vested, though it may be divested if the cestuis fail to survive the period of distribution. Fidelity Trust Co. v. Rowland, 99 N.J. Eq. 72;Fox v. Fox, 19 L.R. Eq. 286; Rhode Island Hospital Trust Co.
v. Noyes, 26 R.I. 323; 58 Atl. Rep. 999.
The accumulations on Helen's half share of the residuary estate now amounts to a million and a quarter dollars and with that we are presently concerned. It is the contention that these accumulations having resulted from the trustee's exercise of sound discretion in past allowances, they must be set aside for final distribution; that the trustee's power of discretion over the accumulated income is spent.
That was not the intention of the testator nor the directions he left. Out of the respective shares of income he gave his son and granddaughter each $10,000 a year and an expectancy in as much more, not exceeding the whole income on their shares of the residuary estate as the trustees in their discretion should see fit to give them; and they were to receive it all when they reached fifty years of age. The gift in expectancy was not predicated upon a discretion to be exercised in intermittent allowances within periodic income as the surviving trustee has apparently interpreted and practiced. There was to be no limit to allowances and none as to occasions except the trustees' sound discretion, and the discretion was left unconfined as to source from which the allowances were to be made, and the time of making was not circumscribed. There was to be an annual minimum allowance but no discretionary allowances out of annual income. The testamentary scheme was to provide a generous drawing account for the needs, comfort and conveniences of the son and granddaughter until they came into the corpus, and to that end the testator placed all the income at the trustees' command. They were his sole concern, upon whom he bestowed all he had, principal and income, and in complete enjoyment when they reached fifty years of age. The gift of accumulated income which was to go with the principal to their issue in case they failed to live to enjoy it was a mere "spillover" to prospects. Helen at the time *Page 756 
was but six and the welfare of her issue was not in mind or at stake. There was no intention that the income should be saved at the expense of the son and granddaughter to increase capital. There was no direction to accumulate, and none is to be implied from the gift of "accumulated income" with the corpus. These words were intended to cover any surplus income not used in discharging the primary purposes of the gift; income casually accumulated and to be paid to the son and granddaughter at fifty, or over if they failed that period. In Edwards v. Grove, 2 DeG.F. J. 210, where income was directed to be accumulated and the executors had discretion to draw upon the income yearly for the use of a beneficiary, it was held that the trustees had the power to reach into the accumulations to satisfy his requirements.
Doubt is made of how much of accumulated income is to be paid to the legatees upon arriving at fifty years of age. According to the clear intent they were to have all the income fund and four-fifths of their respective shares of the residuary estate; the remaining one-fifth to be reserved against misfortune and the income thereon paid to them for life with principal over.
(c) The one-half of Leslie P. Ward's share of the residuary estate upon his death without issue fell into Helen's trust, swelling it. The accumulated income on this is nearly $700,000 and she asks that it be adjudged the subject of the trustees' discretion. Like her share of the residue she is given the enjoyment of this gift at the age of fifty. In the meantime the income is to accumulate and at that period paid to her with the principal, or over to her issue if she dies sooner. Von Fell v.Spirling, 97 N.J. Eq. 527; Swetland v. Swetland, 100 N.J. Eq. 196; Bye v. Strasbourg. 102 N.J. Eq. 300. The direction that the half-share of Leslie P. Ward's gift "shall become the share of my granddaughter, Helen Ward, should she survive him and be held under the trust and disposed of in accordance with the provisions made for her in my will," does not enlarge the field of the trustee's discretion as to allowances out of income, and is in perfect *Page 757 
harmony with the restrictions put on Helen's income of $10,000 annually, and any such further sum "not exceeding the balance" of the said one-half of the said income arising from the said residue. This limitation, it would seem, was purposely imposed to preclude current income to her on the share of Leslie's gift to which the testator made her a contingent legatee upon the event which has come to pass. If that was not the object then the quoted words are meaningless.
(d) The trustee has in hand approximately $75,000 withheld income from the share of Leslie P. Ward's gift. The event upon which he was to be divested of his share of the residue of the estate happened upon his death without issue before fifty, but he was not divested of the income thereon. By the divesting clause he was given the power to appoint one-half his share of the residue of the estate; the other half of the residue passed to Helen's trust fund. The accrued income was not given over; it stands untouched, and remaining vested in him passed to his personal representative. Smith v. Parsons, 146 N.Y. 116.
It is suggested that the accumulated income on Leslie P. Ward's share of the residuary estate impliedly followed the gift over of the principal — to the appointee of the power and to Helen's trust. Gifts of specific shares of a fund embraces previously accrued income only by intendment not by legal implication.Current v. Current, 11 N.J. Eq. 186. The rule that income passes with principal by implication applies to income earned after the gift and before enjoyment, as in Bye v. Strasbourg,supra.
It is, of course, not to be presumed that the testator intended to die intestate as to the accumulated income on Leslie P. Ward's share of the residue, and it is not open to surmise that the failure to include it in disposing of the share was accidental, for we find a similar omission in the gift of Helen's share of the residue upon the same event, while in five other bequests of shares of the residue the words with "accumulations of income [or interest] thereon" are used to complete the disposition. The failure in this single *Page 758 
instance to dispose of the income seems not to have been without purpose. Having deferred the enjoyment of the principal of this estate to a remote future, did not the testator apprehend that if his son and granddaughter should pass away before fifty, and in the meantime lived up to such income as would be meted out to them in careful discretion, their estates might be penniless, bankrupt, not even enough for the requem? And to provide for them in death as in life, did he not discriminate betweencorpus and income and conclude that one-half of their share of the corpus should go to their choice by appointment, the other half to the survivor, and that the accumulated income should reside where he had already committed it by an earlier provision of the will — to their estates? The instrument evinces the testator's thoughtful contemplation of the work in hand and careful preparation by skilled counsel. The product of their collaboration read in the light of the rules for construction of wills discloses a comprehensive testamentary disposition of the entire estate.
The trustee is advised.
(1) That its discretion as heretofore exercised is approved, and in view of its past judicious management of the estate the court does not presume to give instructions as to future policy, but advises that ready and early discussion and favorable consideration be given to Mrs. Dignan's request for allowances to purchase a home and for its maintenance. And for assurances the trustee may apply to the court for sanction.
(2) That the trustee has power, in its sound discretion, to pay Helen Ward Dignan any part or all the income presently accumulated or to be derived from one-half the share of the residuary estate until she arrives at the age of fifty.
(3) That the income accumulated and to be derived from the half-share of Leslie P. Ward in the residuary estate, which fell into the trust for Helen Ward Dignan, is not available for allowances to Mrs. Dignan, and is to be kept until the termination of the trust.
(4) That the income withheld from Leslie P. Ward's share of income from the residue of the estate, with the accumulations thereon, is presently payable to his executor.
 *Page 1