8 N.J. Super. 587 (1950)
74 A.2d 344
JAMES GUSTAVE SPETH, PLAINTIFF,
v.
JAMES GUSTAVE SPETH AND THE PLAINFIELD TRUST COMPANY, TRUSTEES UNDER THE LAST WILL AND TESTAMENT OF MABEL CLAIR HAND, DECEASED, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 15, 1950.
*589 Mr. Augustus S. Dreier, for the plaintiff.
Mr. Ralph J. Smalley, Jr., for the defendants.
JAYNE, J.S.C.
The object of the present action is to elicit a judicial construction of the will of Mabel Clair Hand, who died on September 19, 1947, and a declaration of the interest of James Gustave Speth in the residue of the decedent's estate. In re Ungaro, 88 N.J. Eq. 25, 102 A. 244 (Ch. 1917); R.S. 2:26-68, N.J.S.A.
The inquiry is primarily addressed to the second article of the will, which is here exhibited:
"Second: All of the rest, residue and remainder of my estate both real, personal and mixed of every kind and description and wheresoever situate which I shall own or be entitled to at the time of my death, I give, devise and bequeath to THE PLAINFIELD TRUST COMPANY and JAMES GUSTAVE SPETH, IN TRUST NEVERTHELESS, for the following purposes; to invest and reinvest the rest, residue and remainder of my estate both real, personal and of every kind and description and wheresoever situate, and to collect and receive the income thereon and to pay over the net income thereof to my brother, JAMES GUSTAVE SPETH of Orangeburg, South Carolina for a period of ten years on a quarterly basis and at the end of the ten year period of this Trust then such corpus and principal shall be paid in full to my brother, James Gustave Speth, as aforesaid.
"(a) I further direct my Trustees hereinbefore named that should some unusual circumstances arise, then my Trustees are directed to use in addition to the income, such portion of the principal for the benefit of my brother, James Gustave Speth."
It is at once observed that the interest of the plaintiff in the entire residue is undoubtedly vested both as to income and corpus. A gift to a trustee is regarded in equity as a gift to the cestui, and since the residuary estate vested in the trustee at the death of the testatrix, so it vested in the cestui que trust. Neilson v. Bishop, 45 N.J. Eq. 473, 17 A. 962 (Ch. 1889); In re Collins, 99 N.J. Eq. 333, 133 A. 188 (Prerog. 1926); Traverso v. Traverso, 99 N.J. Eq. 514, 133 A. 705 (Ch. 1926); affirmed, sub nom. Traverso v. McMillin, 101 N.J. Eq. 308, 137 A. 919 (E. & A. 1927); Byrne v. Byrne, 123 N.J. Eq. 6, 195 A. 848 (Ch. 1938); affirmed, 124 N.J. Eq. 273, 1 A.2d 464 (E. & A. 1938); Skovborg *590 v. Smith, 8 N.J. Super. 424, 72 A.2d 911 (Ch. 1950). It is also significant to notice that the sole beneficiary is not the sole trustee. Cf. Morgan v. Murton, 131 N.J. Eq. 481, 26 A.2d 45 (Ch. 1942).
The complaint alleges that the plaintiff has the entire beneficial interest in the residue of the estate held by the trustees and prays that the trust may be terminated and the corpus and accumulated income be forthwith transferred to him.
True, there are adjudications concluding that where in a trust estate the beneficiary, sui juris, has the entire vested interest, both in the income of property held by the trustees for his benefit and in the property itself, there being no limitation of the estate in any contingency to any other person, there being no discretion delegated to the trustees, and no provision that the income or estate shall not be alienable by the beneficiary or attachable by his creditors, equity may exercise the power to terminate the trust.
In displaying the state of the decisional law of New Jersey relative to the subject here projected, it is unnecessary to explore beyond the case of Huber v. Donoghue, 49 N.J. Eq. 125, 23 A. 495 (Ch. 1891), in which a testamentary trust created for the period of ten years was in the circumstances terminated. That decision manifestly recognized the opinion in Sears v. Choate, 146 Mass. 395, to be an influential precedent. In ascertaining the authoritative pertinency of the ruling in the Sears case, one must recognize that there the sole ownership became vested in the beneficiary by reason of an unanticipated occurrence subsequent to the death of the testator. Similar decrees were granted in Brooks v. Davis, 82 N.J. Eq. 118, 88 A. 178 (Ch. 1913), and in Pedrajas v. Bloomfield Trust Co., 101 N.J. Eq. 105, 137 A. 86 (Ch. 1927); affirmed, 101 N.J. Eq. 803, 139 A. 18 (E. & A. 1927). Vide, Camden Safe Deposit & Trust Co. v. Guerin, 89 N.J. Eq. 556, 105 A. 189 (E. & A. 1918).
Next came the exceedingly pertinent comment of Vice Chancellor Leaming in Martin v. Martin, 106 N.J. Eq. 258, 150 A. 338 (Ch. 1930): "The authorities are in harmony *591 to the effect that no doubt can exist as to the power and duty of this court to decree the termination of a trust, where all the objects and purposes of the trust have been acocmplished, where the interests under it have all vested, and where all parties beneficially interested desire its termination. * * * But this will not be done where its effect will be to override and put an end to an active and irrevocable express trust and thus defeat a testator's or donor's intention, if the objects of the trust have not been fully accomplished and the trustee stands ready and able to execute the trust in good faith."
Then ensued the familiar decision in Newlin v. Girard Trust Co., 116 N.J. Eq. 498, 174 A. 479 (Ch. 1934), in which it was resolved that a trust to pay the income to children and the corpus to their executors or administrators may be terminated before the period of distribution of the corpus in the circumstances there present. It is significant to note that the learned Vice-Chancellor was careful to state: "There is no discretion in the trustees, either as to the payment of the income or the principal. * * *"
The situation resulting in the merger of the life estate and the remainder in Dreyfuss v. Kahn, 137 N.J. Eq. 158, 43 A. 2d 887 (Ch. 1945), is not ignored.
The more recent adjudication is Ampere Bank & Trust Co. v. Esterly, 139 N.J. Eq. 33, 49 A.2d 769 (Ch. 1946), in which the previous decisions are collated and reviewed. The testamentary trust in that case may be said to be in its essential characteristics similar to the one under present consideration. Acceleration was decreed.
This ingenious judicial method of accelerating the termination of such a trust is of English ancestry. The Masters of the Rolls were its progenitors. Gray's Restraints on Alienation; Gray on Perpetuities (3d Ed.), § 120; Josselyn v. Josselyn, 9 Sim. 63, 59 Eng. Reprint 281 (1837); Saunders v. Vautier, 4 Beav. 115, 49 Eng. Reprint 282 (1841).
There is no idiomatic chestnut more constantly repeated in our reports than that in the construction of wills the intention of the testator must prevail unless such intention is *592 inimical to an established rule of law, and yet in a case like the present one, to declare the immediate termination of such a trust obviously vanquishes the manifest intention of the testatrix.
I concede it to be the English conviction that the sole beneficiary of a trust whose absolute title thereto is vested, is entitled to terminate it if he is not under a legal incapacity to execute a valid discharge, even though the testator has expressly provided that the trust should not be terminated until the beneficiary reaches a designated age or until a specified period has elapsed. Rocke v. Rocke, 9 Beav. 66, 50 Eng. Reprint 267 (1845); Re Jacob, 29 Beav. 402, 54 Eng. Reprint 683 (1861); Gosling v. Gosling, Johns. V.C., 265, 70 Eng. Reprint. 426 (1859); Re Couturier, 1 Ch. (Eng.) 470 (1907); 33 Halsbury's Laws of England, 114, § 203. But as a result of my research I venture the statement that the more cogitative and persuasive decisions of the courts in the United States are expressive of a contrary view. The most notable case is Claflin v. Claflin, 149 Mass. 19, 23, 20 N.E. 454, 3 L.R.A. 370, 14 Am. St. Rep. 393 (1889).
The American cases recognize primarily the privilege of the donor to qualify his gift as he pleases within legal limits. Cujus est dare ejus est disponere. The English courts concentrate their predominant attention upon the situation of the beneficiary who being substantially the owner of the trust estate should be permitted in their judgment to deal with it as he wishes.
I pause to state that in this discussion I am not alluding to a case in which some subsequent eventuality unforeseen by the testator has vested the cestui with the sole ownership. Sears v. Choate, supra. Nor am I referring to a trust created for successive beneficiaries in which the only purpose of the settlor in originating the trust was to enable the beneficiaries to enjoy the property in succession; nor to dry trusts executed by the statute of uses, Supreme Lodge, K. of P. v. Rutzler, 87 N.J. Eq. 342, 100 A. 189 (E. & A. 1917); nor to those violative of the rule against perpetuities. I have in mind a *593 trust comparable to that established by this testatrix in which the settlor expressly, deliberately, and evidently for some rational reason postponed the beneficiary's full enjoyment of the corpus for so moderate a period as ten years. Such a purpose is normally and legally accomplished through the instrumentality of a trust in which the trustee is meanwhile to govern, control, manage, and administer the corpus.
The American decisions which have terminated such a trust seem merely to be pinned fast to the English originality. Neither the English nor the related American decisions supply any logical or legally sound explanation. Any endeavor to discover a satisfactory legal basis for the rule in the aspect in which Professor Gray has stated it is a disparate undertaking. About a half century after the inaugural decision in Saunders v. Vautier, supra, the same rule was presented to the House of Lords for consideration. Lord Hershell remarked, "The point seems in the first instance to have been rather assumed than decided." The House concluded, however, that the "doctrine has been so long settled and so often relied on that it would not be proper now to question it." Communis error facit jus. That pronouncement seems to me to broadcast an apologetic melody.
There is reason to conjecture that the only basic cause for the English rule is, as Lord Hershell intimates, the incogitant initial assumption that a gift vested in interest will also vest in enjoyment whenever the donee is or becomes sui juris, unless there is an outstanding present or contingent beneficial interest in another person, notwithstanding the manifest attempt of the testator to postpone the complete enjoyment of the gift for a term of years.
There appear to be three theoretical postulates upon which the power to terminate such a trust is precariously sought to be supported. They are (1) that the intervening trust is contrary to public policy in that it constitutes an objectionable restraint on the use or alienation of an absolute estate, (2) that in such circumstances the trust is a dry or passive one, and (3) that there is no person living who can complain.
*594 We have heretofore assumed that the intention of a testator, like his soul, survives and is not interred with his bones.
Frankly, I am unable to comprehend why it is supposed that the postponement of the enjoyment of the principal prohibits the beneficiary from transferring his vested interest in the income and in the principal subject to the provisions of the trust. In fact, it is not uncommon now for financial institutions to purchase such interests.
I surmise that it is the notion that such an assignment extinguishes the trust. Cf. Armour v. Murray, 74 N.J.L. 351, 68 A. 164 (Sup. Ct. 1907).
It is equally difficult to perceive the considerations of policy which are said to prevent a testator from exercising his judgment and discretion by reasonably deferring the unqualified enjoyment of the principal of his devise or bequest without explaining to the beneficiary and to the public his reasons for doing so.
I am not unaware of that human instinctive propensity to reach beyond death in the control of property interests by means of a testamentary declaration. I comprehend the virtue in a policy patrolling the fluidity of economic assets such as exemplified by the rule against perpetuities. The latter rule is directed solely against the postponement of the vesting of estates and is not applicable to their possession or enjoyment. Lembeck v. Lembeck, 73 N.J. Eq. 427, 68 A. 337 (Ch. 1907); affirmed, 74 N.J. Eq. 848, 71 A. 240 (E. & A. 1908). Some rule of similar judicial origin may well be applied in the public interest to limit the period during which a testator postpones the enjoyment by the sole beneficiary of the corpus of the trust, but certainly a period of ten years does not materially offend the public welfare. The point is discussed by Professor Kales in Future Interests (2d Ed.), §§ 658-661; 19 Harvard Law Rev. 60n; Tiffany, Real Property (2d Ed.), § 183; 1 Bogert, Trusts 673. Cf. Camden Safe Deposit & Trust Co. v. Guerin, 87 N.J. Eq. 72, 79, 99 A. 105 (Ch. 1916).
*595 Let us for purposes of illustration envision the hypothetical case of a father whose son is fifteen years of age and manifesting at his age some extravagant propensities. The father bequeaths to him $100,000 in trust, directing his trustee to pay to his son one-half of the income until he becomes twenty-one years of age, the entire income thereafter until he arrives at the age of twenty-five, one-half of the corpus at thirty, and the balance of corpus at thirty-five. He deplored the implications of a spendthrift trust. Shall the father's testamentary plan thus deliberately conceived be judicially demolished by the termination of the trust upon the application of the son when he reaches twenty-one years of age? In the supposititious case it can also be said that the son has a vested interest in both income and principal and the trustees have only the duty of maintaining the fund, collecting and disbursing the income and distributing the corpus.
Such conditions may in some instances seem to be arbitrary, and yet they may rest upon wise and perspicacious reasons known to the testator and unknown to the general public and to the court. Assuredly the validity of the conditions ought not to be made to depend upon our conception of the testator's motive for imposing them, but rather upon their inherent reasonableness from a legal standpoint. I decline to think that the postponement of the enjoyment of the principal of a trust fund for ten years is legally or factually an unreasonable exercise of the undoubted right of a testator to bestow his bounty in conformity with his wishes.
I perceive no justification for declaring in all such cases that a legal inconsistency necessarily exists where a cestui has the income immediately and at the same time has the vested right as remainderman eventually to receive the corpus of the gift.
The next paradox is that a trust otherwise classified as an active one is in such circumstances to be regarded as passive.
Paragraphs 4 to 15 in the present will relate to the activities in which the testatrix contemplated the trustees might engage. They are empowered, inter alia, to retain the securities *596 or change the investments "as they may deem advisable," treat all stock dividends as principal, exercise stock subscription rights or sell them at such prices "as to them may seem best," vote in person or by proxy at stockholders' meetings, join in any corporate reorganization plan, and of course keep the principal invested for the term of the trust.
I have heretofore held that under an active trust the cestui que trust can only enforce in equity his interest to the extent of the settlor's intention, and that a gift in remainder in trust, although merely to manage the corpus, to sell the land, and to distribute the proceeds is to be classified as an active trust. Martling v. Martling, 55 N.J. Eq. 771, 39 A. 203 (E. & A. 1896); Phillips v. Vermeule, 88 N.J. Eq. 500, 102 A. 695 (Ch. 1917); Christine v. Baldwin, 95 N.J. Eq. 83, 122 A. 369 (Ch. 1923); Riley v. Riley, 107 N.J. Eq. 372, 152 A. 665 (Ch. 1930); Skovborg v. Smith, supra.
It seems to me to be axiomatic that unless the testator's intention to postpone the enjoyment of the principal is to be ignored, nay repudiated, the trust cannot be regarded as a dry and passive one. The duty of the trustee to hold and manage the corpus according to the terms of the bequest, if valid, is assuredly an active trust.
The cable upon which we have safely suspended innumerable decisions in the construction of wills has been the manifest intention of the testator. Can there be any misapprehension of the testatrix' intention in the present case? Her intention to postpone is irrefutably evident in the clause authorizing the trustees to "use in addition to the income, such portion of the principal for the benefit of my brother * * * should some unusual circumstances arise."
Both counsel in the present case advocate the termination of the trust and confidently cite some of the New Jersey decisions to which I have referred. Notwithstanding those decisions I am not persuaded that the English doctrine has yet become securely rooted in the soil of the equity jurisprudence of this State. Personally I view its adoption here with disfavor.
*597 The doctrine was considered by the United States Supreme Court in Shelton v. King, 229 U.S. 90, 33 S.Ct. 686, 57 L.Ed. 1086 (1912), and rejected. Justice Lurton who delivered the opinion appropriately remarked: "There is no higher duty which rests upon a court than to carry out the intentions of a testator when the provision is not repugnant to settled principles of public policy and is otherwise valid."
Professor Kales, although in accord with Professor Gray in his hostility to the doctrine of spendthrift trusts, disagrees with him with respect to the rule invalidating a trust in which the enjoyment is reasonably postponed. His critical comment was: "To defeat the testator's intention wholly upon so trivial a ground ought not to be thought of. The attitude of the court in Claflin v. Claflin is in favor of carrying out the settlor's intention, and the result reached, is, it is submitted, sound." Kales on Future Interests, chapter on "Restraints on Alienation," § 294.
The American doctrine enunciated in Claflin v. Claflin, supra, has been preferred in many jurisdictions. See citations in footnotes, 3 Scott on Trusts 1843, and pocketpart; Gray, The Rules Against Perpetuities (4th Ed.) 118. I observe that the ruling is accepted by the American Law Institute. Trusts, § 337 j and k. The diversity of the decisions is exhibited in the annotations in 37 A.L.R. 1420; 45 A.L.R. 743; 123 A.L.R. 1427; 163 A.L.R. 852; 165 A.L.R. 550; 169 A.L.R. 459.
The editors of American Jurisprudence, who reflect the modern developments of the law, state: "Most courts, however, take the view that the intention of the creator of a trust to keep the property intact for the prescribed period will govern, and accordingly refuse to grant a decree of termination of the trust at the instance of the beneficiary. 54 Am. Jur. 87, § 90.
A postponement of the enjoyment of corpus has been repeatedly approved in other cases. Lembeck v. Lembeck, 73 N.J. Eq. 427, 68 A. 337 (Ch. 1907); affirmed, 74 N.J. Eq. 848, 71 A. 240 (E. & A. 1908); Fidelity Union Trust Co. v. *598 Rowland, 99 N.J. Eq. 72, 132 A. 673 (Ch. 1926); Potter v. Watkins, 99 N.J. Eq. 538, 134 A. 84 (Ch. 1926); Martin v. Gifford, 101 N.J. Eq. 411, 138 A. 103 (Ch. 1927); Dwyer v. National Newark, &c., Banking Co., 103 N.J. Eq. 481, 143 A. 625 (Ch. 1928); affirmed, 104 N.J. Eq. 498, 146 A. 914 (E. & A. 1929); Fidelity Union Trust Co. v. Dignan, 105 N.J. Eq. 750, 146 A. 466 (Ch. 1929); Camden Safe Deposit, &c., Co. v. Scott, 121 N.J. Eq. 366, 374, 189 A. 653 (E. & A. 1937); 3 Page on Wills 704, § 1262; 3 Scott on Trusts (1939 Ed.) 1823, § 334.
This retrospective exposition of the subject may well be concluded with the words of Chief Justice Vanderbilt taken from his opinion in Mesce v. Gradone, 1 N.J. 159, 62 A.2d 394 (1948): "The complainant relies on a group of English cases and early New Jersey cases which follow their reasoning. The English authorities are of no force here because of our fundamentally divergent view of the power of the settlor and the beneficiaries of a trust over the trust res. In England the beneficiaries of the trust may by united action terminate the trust, notwithstanding the fact that to do so may nullify the intention of the settlor * * *. In this State it is the intention of the settlor of the trust that governs and not the desires of the beneficiaries."
A judgment may be presented in accord with the views herein expressed.