33 N.J. Super. 530 (1954)
111 A.2d 270
IN THE MATTER OF THE ESTATE OF ISRAEL KORETZKY, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 1954.
Decided December 16, 1954.
*531 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Samuel Kaufman argued the cause for the substituted administrator c.t.a. (Messrs. Bilder, Bilder & Kaufman, attorneys).
Mr. Sanford Freedman argued the cause for the beneficiaries under the will (Messrs. Weisman & Freedman, attorneys).
*532 Mr. Mendon Morrill argued the cause for Progressive Industrial Expediters, Inc. (Messrs. Cole, Morrill & Berman, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
The four children of Israel Koretzky, deceased, join in an appeal from an order directing the sale to Progressive Industrial Expediters, Inc., of all the assets of his estate for $325,000 cash. Earlier litigation in this estate is reported in 8 N.J. 506 (1951).
The present cause came on before the trial court upon an order secured in behalf of the substituted administrator c.t.a. and substituted trustee under the decedent's will, requiring the children to show cause (in effect) why Progressive's offer should not be accepted. On the return day, though pressed by the court for his views as to the offer, the administrator said, and repeated himself, that he could not recommend it. Why he could not recommend it, we do not know and the brief on his behalf does not say.
Notwithstanding the administrator's position, his counsel himself presumed to recommend the offer (the court said counsel "recommends its acceptance"), and the court concluded to approve it; this, despite strong pleas advanced by the testator's children and two bidders for an adjournment of ten days because of prospects of other bids. Indeed, a cash offer of $400,000, made apparently by a reliable concern, was submitted some days after the hearing before the trial court. The offer is still open.
Appellants complain of another bid that came before the court on the return of the order to show cause. The court in the exercise of its good judgment and after conferring privately in chambers with the accountant it had appointed for the estate, rejected the bid. Our present practice is opposed to conferences in chambers. Besides, the reason why the bid was rejected should have been put upon the record. Callen v. Gill, 7 N.J. 312 (1951).
One of the principal assets of the estate is a block of stock in Bright Star Industries. After the court approved Progressive's *533 offer, the administrator told a number of persons, and later repeated, that he had been asked by the successful bidder to stay on as president of the company. He added then that "the family could have gotten $50,000 more from" Progressive "if the family had spoken up." What, it may be asked, did he do, as the fiduciary for the family, to secure the additional $50,000?
Progressive's president submits to us an affidavit stating that at no time prior to the trial judge's decision was there any discussion or understanding between the administrator and any officer of the corporation as to the future employment of the administrator by Bright Star Industries. This affidavit of course  though it may have been intended to be all-embracive  does not establish that there was no such proposal to the administrator by someone else on behalf of the company. Unfortunately the administrator himself offers no affidavit on the matter, and the brief on his behalf passes the point.
Since then, the administrator seems to have made some effort to protect Progressive's position. Part B of the Appellate Division granted a stay of the order appealed from, allegedly over his opposition. An answer to a counterclaim he thereafter filed below asks for confirmation of the sale to Progressive. There is another circumstance here. At the hearing below the administrator had said that he wanted to make it very clear that the company was making headway and could continue to operate. Nevertheless 18 days later, as soon as he learned the sale was stayed, he wrote a letter to the testator's son stating that creditors of the company were pressing for payment and that he did not know how long the company could remain in existence. In the face of this emergency we put the case down for immediate argument and quick disposition.
It will be observed that the approval of the sale was thus put through on the administrator's application for instructions notwithstanding his diffidence over the matter at the hearing. There obviously are circumstances here of which the trial court was not apprised and which make it *534 manifest that the adjournment sought below should have been granted so as to permit further bidding. It is said on behalf of Progressive that our concern should be with the integrity of the judicial sale. Indeed it should be, but this very concern impels us to direct that the order appealed from be vacated, the cause remanded and an opportunity given, on short notice, to submit offers for the assets, as the court below may determine.
One more matter must be dealt with. There is an offer by the testator's children to purchase the assets of the estate for such sum up to $250,000, as may be necessary to pay the administration expenses, taxes and debts of the estate. Approximately this amount may be required for this purpose. Apparently the children then plan to sell these assets to someone who has offered to pay them the sum of $385,000 plus an additional $75,000 to the testator's son by way of salary. Part B of the Appellate Division, before granting the stay above mentioned, directed the children to deposit with the court $250,000 in cash, which has been done.
The children's proposal cannot be accepted. Under one provision of Mr. Koretzky's will (to state the general effect) he put in trust the controlling interest in Bright Star Industries and another corporation, vesting his trustees with an absolute discretion to apply income and principal for the support of his son or the son's wife and children, should he have any, until the son becomes 40, and thereupon to turn over to him the trust fund. If the son should die under 40, provision is made for his children. He is presently 30 and has never married.
The sale of the estate assets to the children for $250,000 under the circumstances above stated, is obviously aimed at terminating the trust and cutting off contingent rights of unborn persons. No bid by the children can be sustained with these objects in view. Cf. Ajax Electrothermic Corp. v. First Nat. Bank of Princeton, 7 N.J. 82 (1951); Fidelity Union Trust Co. v. Margetts, 7 N.J. 556 (1951); Godfrey v. Roberts, 65 N.J. Eq. 323 (Ch. 1903); In re Smith, 94 N.J. Eq. 1 (Ch. 1922); Martin v. Martin, 106 N.J. Eq. 258 *535 (Ch. 1930); In re Kuser's Estate, 132 N.J. Eq. 260, 274 (Prerog. 1942); Speth v. Speth, 8 N.J. Super. 587 (Ch. Div. 1950); Plainfield Trust Co. v. Diem, 12 N.J. Super. 380 (Ch. Div. 1951); 3 Scott on Trusts §§ 337.4, 340 (1939).
The case will be remanded as above directed, but in view of the emergency, the usual mandate herein shall issue within three days after judgment. See R.R. 2:9-1(b) and 1:9-1(a). Reversed, with appellant's costs and administrator's costs payable out of the estate.